## TONEY v. GEO. A. FULLER CO. et al.
### No. 1026.

Court of Appeal of Louisiana. First Circuit.
Oct. 5, 1932.

Shelby Taylor and A. B. Parker, both of Baton Rouge, for appellant.

Chas. A. Holcombe, of Baton Rouge, for appellees.

MOUTON, J.

George W. Toney, while in the employ of George A. Fuller Company as a watchman, was killed, February 4, 1931, by George Sevier.

Mrs. Virginia Toney, widow of George Toney, brings this suit individually, and as tutrix of the minor children issue of her marriage with Toney, to recover compensation against defendant company and the Union Indemnity Company, alleged insurer of defendant company, under the provisions of the Employers' Liability Act (Act No. 20 of 1914 as amended).

542

Judgment was rendered below rejecting the demand, from which plaintiffs prosecute this appeal.

The George A. Fuller Company, defendant, while engaged in the construction of the State Capitol Building in Baton Rouge, had employed George Toney, deceased, as a watchman over the grounds where the building was being constructed.

George Sevier was also a watchman at the time over the university grounds which adjoin the capitol grounds.

The evidence shows that Toney was killed on the capitol grounds by Sevier the evening of February 4, 1931.

Sevier testifies that prior to that time he had been on the premises of the capitol where Toney was watchman, had been in his house, was never ordered off the grounds, and that Toney had asked him to drop around and spend a "little while with him." There is no evidence in the record contradicting that statement, and nothing to indicate that these two watchmen had not been on friendly relations until the night before the killing, when Sevier called upon Toney for the return of a light bulb which had been taken by Toney from the premises of the university.

Sevier says, when Toney returned the bulb to him, he said, "Here's your light, take it and get out," and that "he was just as mad as he could be."

Sevier testifies that at the time of the difficulty, which resulted in the killing, he had put the lights on in some of the buildings of the university, and as he came over or was going across the capitol grounds to put on the main lights that went on the road, he turned around and saw Toney, who accosted him, using these words: "What are you doing up there?" To which he answered: "I am tending to my business here." That Toney said: "You ain't got any business here." To which Sevier replied, "I have got as much business here as you have," and started to walk across the capitol grounds. Sevier says Toney then shook his gun at him and said, " 'I'll beat your * * * damn head off,' and made for me." Toney then, according to Sevier's testimony, struck him across the head with the barrel of his pistol, knocked him down; "almost knocked him out cold," as he expresses it. He testifies that as he was getting up, seeing that Toney was going to hit him again, he began to shoot; that Toney started towards him and that he shot again; that Toney hit him on the head three times, badly bruised him up; and that the blood was running down his face.

Sevier says: "I thought he had finished me with that gun. I was knocked out." Sevier when he gave his testimony was 65, was therefore about 64 years old when he was knocked down by these blows, which we have no doubt were very severe, particularly for a man of that age. Sevier says he did not fire at Toney before he was struck.

■ ■ L. H. Poole testifies that he was walking towards his room, heard some one holler, "Look out, there's a fight," looked around and saw Sevier on his knees then about twenty-five feet away; saw Toney hitting him on the head with a pistol, and that Sevier had been knocked to his knees before he fired his gun. This witness, the only one who saw the fight besides Sevier, corroborates Sevier in the statement he made, that he fired his pistol after he had been struck. It is clear from the evidence of these two witnesses, and which stands uncontradicted, that Toney was the aggressor, and that Sevier in self-defense had the right, for his protection from great bodily harm or death, to shoot Toney, his assailant, to repel the assault.

In the case of Morris et al. v. Young & De Britton, 9 La. App. 180, 119 So. 277, in passing on a question presenting similar issues, we said: Morris, for whose death compensation was asked by his surviving widow, had gone out for the deliberate purpose of cowing Williams, shot him without legal excuse or justification, was himself shot by Williams who acted in self-defense; that the testimony presented a case covered by section 28 of the Employers' Liability Act (Act No. 20 of 1914). Morris by his conduct had debarred his dependents from recovering compensation for the loss of his life.

Likewise, in this case, Sevier acted in self-defense, precluding the widow and dependents of Toney, for a like reason, from obtaining compensation for the loss of his life, under the provisions of the compensation statute.

■ It is contended by counsel for plaintiffs that Sevier was a trespasser on the capitol grounds when Toney, acting in the discharge of his duties as watchman, and in attempting to eject him therefrom, was killed, and that his dependents are entitled to compensation.

It is fully shown that Toney had been instructed not to carry a gun as watchman on the capitol grounds. He was employed as watchman by Laytor, timekeeper for the defendant company, who says, that he was instructed by Klein not to carry a gun, and in case "of any trouble" not to assault any one but to call on the police. Hence, he was violating these instructions when he was carrying his pistol on the occasion mentioned. Counsel for plaintiffs claim that the officers of defendant company had seen Toney on the grounds with his pistol, had made no objection thereto, should have discharged him, or else the defendant company must be held to have acquiesced in his conduct.

Byers. night watchman for defendant company, testifies he was also prohibited from carrying a gun; says he had the same job

with Toney, and was instructed, in case he had any trouble with any one refusing to obey orders, to go to the telephone and call the officers.

Officers of the defendant company testified in the case, and we fail to see from their testimony that they knew Toney was carrying a pistol in disobedience of orders. It must be observed that Toney was not only instructed not to carry a weapon, but was in addition directed, as was Byers, the night watchman, not to assault any one who offered resistance, but, in that event, to call up the police officers. These instructions show beyond question that these watchmen were specifically prohibited from using force in the performance of their duties. Conceding that as a general proposition the scope of the employment of a watchman would embrace the right to use force for the ejectment of a trespasser from the premises under his supervision, but when his employer specifically instructs him not to use force and to call up the police officers in the event of resistance to his authority, this shows that his employer intended to permit the use of force only through the constituted authorities. When a watchman acting under such restrictions uses brutal force, even against a trespasser, he indulges in the commission of an act not only against his instructions but beyond the scope of his employment thus limited by his employer. For such conduct the watchman must be held to have acted on his individual initiative and responsibility.

The fact is that Sevier was going across the premises of the capitol to put on some lights for the university he was, representing for the purpose of doing what he had done before to the knowledge of Toney without objection from him and with his implied approval. Evidently, Toney had been angered when he was made to return to Sevier the electric light bulb, and upon seeing Sevier on the grounds, actuated by a revengeful spirit, brutally accosted him and proceeded, even without ordering him to leave the premises, to beat him unmercifully on the head with the barrel of his pistol.

In the light of the evidence, hereinabove referred to, and which falls on the pivotal issue of this contest, it is impossible to escape the conclusion that Toney was actuated on that occasion by a feeling of ill will towards Sevier and was not prompted by a sentiment of duty impelling him to discharge or perform the duties which rested upon him as a watchman, particularly when considered in connection with the instructions he had received not to assault even a trespasser and if his orders were disobeyed, to call for the assistance of the police authorities. The assault of Toney on Sevier brings us to the consideration of the compensation statute, section 28, where it says:

"That no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another, or (2) * * * (3) * * * or (4) by the employee's deliberate breach of statutory regulations affecting safety of life or limb."

We have quoted the two foregoing clauses of that section of the statute which are pertinent to the issues involved herein. We find, as before stated, that Toney was actuated by a feeling of revenge and that his act was therefore deliberate. If we be mistaken in the motive thus ascribed to him, it, however, clearly appears that in beating up Sevier with his pistol, and before Sevier had drawn his pistol or attempted to defend himself, Toney was acting with the "wilful intention" of injuring Sevier, which brings the case directly under the provisions of the statute quoted under heading one.

Our statutes, unquestionably, forbid the commission of such offenses as assault and battery and which are enacted for the protection of "safety of life or limb." The breach of those "statutory regulations" is prohibited by our laws. It is therefore obvious that when Toney committed an unprovoked assault on Sevier he was guilty of the "deliberate breach of statutory regulations affecting safety of life or limb," and had debarred himself, if he had lived, from any right to recover under our compensation statute, which precludes his widow and dependents from relief under that law.

Counsel for plaintiffs refer to decisions where it is held that negligence or carelessness is expressly excluded as a defense under the Employers' Liability Act. The correctness of these decisions cannot be questioned, but where, as in this case, there has been a "willful injury to another" and a deliberate breach of our statutory regulations, issues of negligence or carelessness do not arise.

"Negligence or carelessness signifies want of care, caution, attention, diligence or discretion in one having no positive intention to injure the person complaining thereof; or the omission to use the means reasonably necessary to avoid injury to others." Black's Law Dictionary, p. 808.

It would be doing violence to the evidence in this record to say that in thus assaulting Sevier, Toney had merely failed to exercise proper care or caution; that he had no positive intention to injure him or had simply omitted to use reasonable means to avoid injuring him.

█ It is therefore apparent that the question of negligence is foreign to the issues in this case.

In the case of Piske v. Brooklyn Cooperage Co., 143 La. 455, 78 So. 734, the court, though recognizing that the usual common-law or

statutory rules of evidence is not given in compensation suits, said that it is incumbent in such cases for the claimant to prove that the accident occurred while the employee was performing services arising out of and incidental to his employment.

Plaintiffs have failed to make that proof and this is established by a preponderance of the evidence.

Counsel for plaintiffs refer also to the liberal construction given by our courts to the Compensation Law. In order to give the relief sought, the provisions of the statute which refuse compensation where the employee has willfully injured another, and in the case of a deliberate breach of statutory regulations, would have to be read out of it, which could not be considered in the light of a liberal interpretation of its provisions, but as a piece of legislation on our part, constitutionally inhibited.

We can find no error in the judgment rejecting the demand, which is hereby affirmed.