FAVRE v. WERK PRESS CLOTH MFG. CO., Inc.*

No. 14548.

Court of Appeal of Louisiana. Orleans.

Feb. 12, 1934.

J. I. McCain, of New Orleans, for appellant.

Pomes & McCabe, of New Orleans, for appellee.

HIGGINS, Judge.

This is a suit for one hundred weeks' compensation at the rate of $6.82 per week and for $250 médical expenses alleged to be due under the workmen's compensation statute (Act No. 20 of 1914, as amended) for the loss of an eye. The defenses are:

First, that plaintiff's injury did not arise during the course of his employment;

Second, that the injury did not result while plaintiff was performing services arising out of and incidental to his employment;

Third, that plaintiff was hurt while throwing at another employee with the willful intention of injuring him.

There was judgment dismissing the suit, and the plaintiff has appealed.

The evidence shows that the defendant is admittedly engaged in one of the hazardous businesses enumerated in section 1 of Act No. 20 of 1914, and that the plaintiff was employed as an operator of one of the cloth-making machines on the second floor of the defendant's plant in the city of New Orleans. Working in close proximity to him were four other young men employed in the same capacity as plaintiff. On Saturday, October 1, 1932, about 4 p. m., the plaintiff went to the toilet, and as he emerged therefrom he came between two other employees, Earl Favre and Johnny Woods, who were playfully throwing at one another a piece of alligator pear seed which had been left over from their noon meal. The plaintiff was struck by a piece of

the seed thrown by Earl Favre, his brother. The plaintiff returned the throw at Earl Favre, and the parties mutually engaged in throwing at each other once more. The plaintiff then retired to where his machine was located for the purpose of cleaning it before leaving the plant. Johnny Woods and Earl Favre continued to throw at each other some distance away from the plaintiff's machine, and about two minutes later, when Earl Favre threw at Johnny Woods, a piece of the alligator pear seed struck the plaintiff in the left eye. Although the plaintiff suffered pain, he attempted to wipe off the machine, but the pain became too great and he left the premises and went home. It is not disputed that the plaintiff subsequently lost the sight of his left eye.

It appears that the employees ceased their work at 4 p. m., and it was customary to clean their machines before leaving, and that some of the employees, at the time the plaintiff was hurt, were washing their faces and hands and changing their clothes preparatory to retiring from the plant.

Did the accident occur during the course of plaintiff's employment?

In Kern v. Southport Mill, Ltd., 174 La. 432, 141 So. 19, 21, the Supreme Court said: "Now an accident occurs in the course of an employment when it takes place during the time of such employment; just as a happening occurs in the course of any given day when it takes place during that day. Hence the provision that the accident, to entitle the employee to compensation, must occur in the course of his employment, means nothing more than that it must have taken place during the hours of employment and not at any other time."

In Baker v. Texas Pipe Line Company, 5 La. App. 25, it was held (syllabus): "Under the Workmen's Compensation Law of Louisiana an injury sustained by an employee immediately after the close of the day's work and while he is still on the employer's premises and in the act of retiring therefrom, arises out of and in the course of his employment."

█ In view of the above authorities, we have little difficulty in reaching the conclusion that the injury arose during the course of plaintiff's employment.

The second contention of the defendant is predicated on the ground that the plaintiff, as an employee, had ceased his work at 4 p. m., and then engaged in "horseplay," which was wholly disconnected with his employment

and in violation of his employer's instructions and was, therefore, pursuing his own pleasure in participating in throwing the piece of alligator pear seed which was not in any way used in the defendant's business.

■ At the outset we may say that mere disobedience to orders by an employee does not defeat his right to compensation. Jones v. Landry, 10 La. App. 740, 122 So. 913.

In the case of Myers v. Louisiana Ry. & Nav. Co., 140 La. 937, 74 So. 256, 257, the Supreme Court held (syllabus): "The test to determine whether injuries to a workman arise out of his employment is not whether the cause of the injury, that is, the agency producing it, was something peculiar to the line of employment, but whether the nature of the employment was such that the risk from which the injury resulted was greater for the workman than for a person not engaged in the employment."

In Kern v. Southport Mills, Ltd., supra, the Supreme Court stated the rule as follows:

"And, when one finds himself at the scene of accident, not because he voluntarily appeared there but because the necessities of his business *called him there*, the injuries he may suffer by reason of such accident 'arise out of' *the necessity* which brought him there, and hence 'arise out of' his employment, if it so be that he was *employed* and his employment required him to be at the place of the accident at the time when the accident occurred.

"In determining, therefore, whether an accident 'arose out of' the employment, it is necessary to consider only this: (1) Was the employee then engaged about his employer's business and not merely pursuing his own business or pleasure; and (2) did the necessities of that employer's business reasonably require that the employee be at the place of the accident at the time the accident occurred?

"The question whether or not the employee *might* have been injured in the same way, and even at the same place and time had he not been called there by the necessities of his employer's business, but had gone there only for his own pleasure or in pursuit of his own business, has nothing whatever to do with the case. It was his employer's business which called him to the place and time of the accident and not his own pleasure or business; and hence his injuries arose out of his pursuit of his employer's business and not out of his pursuit of his own business or pleasure.

"In the final analysis that is the sum and substance of the principle on which all compensation cases rest, notwithstanding the many *words* in which that principle has been wrapped up."

■ It is very well established in compensation cases that the danger of injury from horseplay by fellow workmen is a risk incidental to the employment, and claims arising therefrom are compensable, particularly where the injured employee did not originate or participate therein.

In Leonbruno v. Champlain Silk Mills, et al., 229 N. Y. 470, 128 N. E. 711, 13 A. L. R. 522, we find the following:

"Cardozo, J. The claimant while engaged in the performance of his duties in the employer's factory was struck by an apple which one of his fellow servants, a boy, was throwing in sport at another, and as a consequence lost the better part of the sight of one eye.
* * *

"That it arose 'in the course of employment' is unquestioned. That it arose 'out of' employment, we now hold. The claimant's presence in a factory in association with other workmen involved exposure to the risk of injury from the careless acts of those about him. He was brought by the conditions of his work 'within the zone of special danger.' Thom v. Sinclair, 1917 A. C. 127, 142. Whatever men and boys will do, when gathered together in such surroundings, at all events is something reasonably to be expected, was one of the perils of his service. We think with Kalisch, J., in Hulley v. Moosbrugger, 87 N. J. Law, 103, 93 A. 79, that it was 'but natural to expect them to deport themselves as young men and boys, replete with the activities of life and health. For workmen of that age or even of maturer years to indulge in a moment's diversion from work to joke with or play a prank upon a fellow workman, is a matter of common knowledge to every one who employs labor.' The claimant was injured not merely while he was in a factory, but because he was in a factory, in touch with associations and conditions inseparable from factory life. The risks of such associations and conditions were risks of the employment. Thom v. Sinclair, supra; Matter of Redner v. H. C. Faber & Son, 223 N. Y. 379, 119 N. E. 842."

In Barden v. Archer Daniels Midland Co., 187 Minn. 600, 246 N. W. 254, 256, it was said: "The accident can well be said to have been the natural result of the horseplay proclivities of relator's foreman. Barden (plaintiff) was exposed by his employment to the risks

therefrom. The causal connection between the injury of the deceased and the conditions under which he was required to work placed the liability upon the employer."

The following quotation from East Ohio Gas Company v. Coe, 42 Ohio App. 334, 182 N. E. 123, 124, is also pertinent: "We think that in Industrial Commission v. Weigandt [102 Ohio St. 1, 130 N. E. 38], supra, the Supreme Court of Ohio clearly recognized that the association of men in a common work is an environment of the employment which is to be taken into consideration in determining the risks incident to the employment; that every employee is peculiarly exposed to such pranks from his coemployees as are inspired by nothing more than a well-nigh universal human craving for fun; that such pranks, when careless though innocent, not infrequently occasion bodily harm and are properly considered as a hazard which an employee required to work with others must encounter in the performance of his duties; and that therefore such pranks constitute a risk reasonably inherent in or incident to the conduct of the employer's business."

The following is quoted from State ex rel. H. S. Johnson Sash & Door Company v. District Court, 140 Minn. 75, 167 N. W. 283, 284, L. R. A. 1918E, 502: "Filas (plaintiff) was exposed by his employment to the risk of injury from the throwing of sash pins in sport and mischief."

See, also, Cassell v. U. S. Fidelity & Guaranty Co., 115 Tex. 371, 283 S. W. 127, 46 A. L. R. 1137.

Does the participation of the injured employee in the horseplay affect his right to compensation? The evidence shows that the plaintiff did not instigate the skylarking, but only momentarily participated therein and subsequently withdrew and went to his machine for the purpose of performing one of his duties. He was actually at his post of duty about two minutes before the accident, preparing to perform the service which he was required to do at the time that he was struck in the eye.

In the case of Brown v. Vacuum Oil Company, 171 La. 707, 132 So. 117, 119, the plaintiff was a member of a crew drilling an oil well for the defendant employer. He was using a hose to wash the dirt from the pipes and had sprayed water on another employee by the name of Hasha. While the evidence did not clearly show that Brown deliberately wet his co-worker, the court considered the case as if it had been shown that he intentionally did so. Hasha resented the wetting and sought to wrest the hose from Brown for the purpose of wetting him. During the scuffle for the hose, Brown fell to the paved floor and was injured and sued to recover compensation. In reversing the decisions of the district court and the Court of Appeal and granting compensation in favor of the plaintiff, the court said:

"The district judge and the Court of Appeal [15 La. App. 283], 128 So. 691, seem to have attached great importance to the act of throwing water on Hasha which they construed as a fault and an invitation to Hasha to abandon his work and go to Brown and engage in the scuffle. And having brought about the scuffle, Brown ceased momentarily though it was, his employer's business and shut himself off from recovery for the accidental injury. * * *

"And this court has held that whether employer, employee, or fellow employee is guilty of negligence resulting in injury to employee is immaterial, as affects employer's liability under Employer's Liability Act (Act No. 20 of 1914, as amended). Garcia v. Salmen Brick & Lumber Co., 151 La. 784, 92 So. 335; Ferguson v. Cady-McFarland Gravel Co., 156 La. 871, 101 So. 248, 249.

"It is therefore immaterial in this case whether Brown was guilty of a fault in throwing water on a fellow employee, for, as we have seen, fault and negligence cannot be pleaded against him.

"It is true the cause of Hasha's going to Brown was his belief that the hose had been turned on him purposely, but the immediate and proximate cause of the injury to Brown was his slipping on the wet floor as a result of the scuffle brought about and forced upon Brown by his coworker. Brown would not have been engaged in the scuffle had not Hasha gone to him and started it. It can hardly be said therefore that Brown had voluntarily turned aside from his work, and that therefore the accident was not in the course of his employment and did not arise out of his employment.

"Had Brown left his work and gone down to where Hasha was and engaged him in a scuffle, then a different situation might have been presented.

"It might then have been well said that the employee had ceased his master's work and then gone off to engage in a frolic or 'horseplay,' whatever that may mean.

"But Brown remained at his work and was actually working when Hasha rushed upon

him for the purpose of taking the hose away from him.

"The defense here made and the ruling of the court in sustaining it is without precedent in the jurisprudence of this court.

"The ruling introduces a new as well as a novel defense on the part of employers to avoid payment of compensation fixed by the statute, a defense not within the contemplation of the statute.

"In the Ferguson Case, supra, in considering the question as to whether the accident was one arising out of the employment, we said:

" 'The moment we begin to indulge in hairsplitting distinctions in · cases of this kind, that moment we approach the danger line of reading into the statute the defense that the employee assumes the risks of his employment.' "

. In support of its conclusions the Supreme Court referred to the following cases in this manner:

"In the case of Guderian v. Sterling Sugar & Ry. Co., 151 La. 60, 91 So. 546, we held that, where a foreman reprimanded and discharged an employee and was assaulted and injured by the employee as a result of the discharge, and while he, pursuant to his duty, was settling with the employee, the injury arose out of and in the course of the employment, though he (the foreman) was not without fault, in that he charged the employee with lying, and resisted the assault by striking the discharged employee with a broom. * * *

"There was a case in all respects quite similar to the instant case before the Court of Appeal, Parish of Orleans, Schexneider v. General American Tank Car Corp., 5 La. App. 84.

"In that case the employee was accidentally shot and killed by a fellow employee, a night watchman.

"It appeared in that case that the watchman had 'punched' out for the day and Petrolia, a water boy, had 'punched' in. The watchman waited for the water boy who was going for his first bucket of water. The watchman hollered to the boy, who in a playful way stooped down to pick up a piece of gravel saying 'Don't call me that.'

"The watchman said, 'Look what I got?' holding up a pistol. The boy replied, 'I eat that,' and the gun went off and killed the boy. There was no doubt in the mind of the court that the killing was purely accidental.

"The defense there made was that the accident did not arise out of the employment, but was a direct result of the 'horseplay' and skylarking which took place between the watchman and the water boy.

"The syllabus by the court which correctly reflects the decision is as follows:

" 'A water boy, accidentally shot and killed by a fellow employee, a night watchman, due to the mutual indulgence in horse play in which the night watchman brandished his revolver in a mocking spirit of hostility, may be said to have been injured and killed in the course of and his injury to have arisen out of his employment.'

"An application for a review of that case was denied by this court. * * *

"Another case which may be appropriately referred to is the case of Stark v. State Industrial Accident Commission, 103 Or. 80, 204 P. 151, 156.

"In that case Stark and a fellow workman were playing with an air hose and struggling for possession of it, in order to turn it on each other. Stark got possession of the hose and turned and ran. In doing so he stumbled over a block and got the hose in such a position that the air was blown into his rectum, causing peritonitis and death.

"The court said: 'It was an unexpected accident, but nevertheless may reasonably be said to have arisen out of and in the course of the employment. It was an incident of such employment by reason of the appliance used in the work, and the custom which prevailed of the employees, without the infraction of any enforced rule of the establishment, diverting the use of the air hose to sport. The play which had been going on * * * was entirely mutual. The question as to who started the sport can become material only for the purpose of fixing the fault, and as we have already pointed out, fault of the injured employee under certain conditions, such as prevailed in this case, does not constitute a reason for not allowing compensation.' "

· Thus it will be noted in the above cases that Brown and Stark, the injured employees, and the water boy who was killed, participated in the skylarking which resulted in the respective accidents.

Our courts have gone even further, for the jurisprudence makes the employer responsible for the criminal act of an employee which results in injury to another employee. Since the employer is liable for the criminal act of an employee, it seems to follow that he would be responsible for the negligent prankish act of an employee because the former is unnatu·

ral and not to be anticipated, while the latter is natural and to be expected.

In the case of Ferguson v. Cady-McFarland Gravel Company, 156 La. 871, 101 So. 248, 250, the deceased was killed by a co-worker, being struck down without provocation. In granting compensation to his survivors the Supreme Court said: "As employment in gang work, such as decedent was engaged in, necessitates collaboration, the working together of the employees constitutes the nature of such employment, and the risk of assault and personal injury to the employee is to be viewed from that aspect. Obviously, such risk is greater than it would be to a person not engaged in such employment, because such person is not required to be constantly in the presence of an enemy, should he have one."

See, also, Keyhea v. Woodard-Walker Lumber Company (La. App.) 147 So. 830.

■ From the foregoing authorities it appears that an injury arises out of the employment if it results from a risk caused or created by the employment. The danger of injury from horseplay is a risk of employment where several persons are required to work together. The necessary causal connection between the injury and the employment exists because the plaintiff was injured as the result of pranks or horseplay which danger plaintiff would not have incurred except for his association with coworkers and the association was necessary only because of plaintiff's employment.

But counsel for the defendant seeks to distinguish Brown v. Vacuum Oil Company, supra, and Schexneider v. General American Tank Car Corporation, supra, on the ground that in those cases the instrument causing the injury belonged to the employer or was used in connection with its business, whereas here the piece of alligator pear seed did not belong to the employer and was not used in its business. In short, the argument is that if the prankish employee seizes some instrument belonging to the employer or used in connection with the business and injured a co-worker, there is liability, but if he chose to pick up something on the employer's premises which he did not own or which was not used in connection with his business and struck a fellow worker therewith, that there is no liability. It is true that in the case referred to the court does discuss the fact that the injuring instrument belonged to the employer to more strongly show causal connection between the injury and the employment, but nowhere is it said that it is necessary that

the injury be inflicted by some equipment belonging to the employer or used by it in his business. The danger or risk does not necessarily result from the presence of the inanimate thing per se, but from the negligent or criminal use thereof by a fellow employee. It would seem both logical and reasonable to say that the liability of the employer is the same where an employee is hurt as a result of horseplay whether or not the injuring instrument is owned or used by the employer in his business where the injured employee is hurt while performing services for the employer at the place assigned to him.

In Keyhea v. Woodard-Walker Lumber Company, supra, the injury was caused by a gun owned by a fellow employee.

In Kern v. Southport Mills, supra, the injury was caused by an automobile owned by a third person.

In the case of Leonbruno v. Champlain Silk Mills, supra, the injuring missile was an apple.

In Brown v. Vacuum Oil Company, supra, there was no injuring instrument, the scuffle being a contributing cause of the accident.

We have been referred to the case of Conaway v. Marine Oil Company, 162 La. 147, 110 So. 181. We do not believe that case apposite because the court found that the risk arose from a matter wholly disconnected from the employer's business, the pistol being produced by another employee who had no right or authority to have it, and it was purely accidental that the deceased was shot and not as a result of animosity between himself and his co-worker or as a result of a prankish act which the courts have held is a risk incidental to the employment because of the mutual association of the employees, Schexneider v. General American Tank Car Corporation, supra.

The cases of Gooding v. Beauregard Laundry Company, Inc., 9 La. App. 392, 120 So. 507, and Pierre v. Barringer, 149 La. 71, 88 So. 691, are not in point because the court in each case reached the conclusion that the injured employee had abandoned his post and voluntarily exposed himself to a danger in another part of the premises of the employer wholly disassociated and disconnected with his employment.

■ We realize that the line of demarkation is very finely drawn and not as clear as we had hoped to find it between cases where it is said that the risk or hazard producing the injury was incidental to and arose out of the

employment, as distinguished from the cases where it was held to the contrary. In this case it is sufficient to say that in two instances, our Supreme Court has permitted claimants to recover compensation where the injured or deceased party participated in the horseplay; consequently, we conclude that the danger of injury from horseplay is a risk of employment and that the prior participation therein by the plaintiff does not affect his recovery even though the instrument which caused the injury was not part of the equipment of his employer or utilized by it in its business.

The third and final defense is based on paragraph 1 of section 28 of Act No. 20 of 1914, which reads as follows: "Section 28. 1. Be it further enacted, etc., That no compensation shall be allowed for an injury caused (1) by the injured employee's wilful intention to injure himself or to injure another."

The evidence shows that there was no wilful intention on the part of any of the parties who indulged in playing to hurt one another. While it is true that horseplay may result in an injury to one of the participants or an innocent bystander, we do not believe that it could be said that the injury was willfully inflicted. It is our opinion that the evidence shows that the injury was the result of carelessness, negligence, and recklessness. Plick v. Toye Bros. Auto & Taxicab Co., 13 La. App. 525, 127 So. 59; Selser et al. v. Bragmans Bluff Lumber Co. (La. App.) 146 So. 691; Morris v. Young & DeBritton, 9 La. App. 180, 119 So. 277.

It appears that there is no dispute that the average weekly wage of the plaintiff was $10.50 and that he is entitled to recover for the loss of one eye one hundred weeks' compensation at the rate of 65 per cent. of his weekly wage, or $6.82, and $250 for medical expenses.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of the plaintiff, Roy Favre, condemning the defendant, Werk Press Cloth Manufacturing Company, Inc., to pay him one hundred weeks' compensation at the rate of $6.82 per week, with legal interest on each installment from its due date until paid, and in addition thereto the sum of $250 for medical fees and hospital expenses. All costs to be paid by defendant.

Reversed.