247 So.2d 273 (1971)
J. C. SINGLETON
v.
YOUNGER BROTHERS, INC., and Employers Mutual Liability Insurance Company of Wisconsin.
No. 4252.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1971.
Rehearing Denied May 10, 1971.
Writ Refused June 21, 1971.
*274 Charles E. McHale, Jr., New Orleans, for plaintiff-appellant.
Wood Brown, III, Montgomery, Barnett, Brown & Read, New Orleans, for defendants-appellees.
Before CHASEZ, LEMMON, and GULOTTA, JJ.
LEMMON, Judge.
Plaintiff, J. C. Singleton, appealed from a judgment rejecting his claim for workmen's compensation benefits against his employer, Younger Brothers, Inc., and its workmen's compensation insurer, Employers Mutual Liability Insurance Company of Wisconsin.
Plaintiff was a truck driver based at Younger's branch office in Marrero, Louisiana. He was paid bi-weekly on the premises at the Marrero office.
Plaintiff's off days at the time of the accident were Thursdays and Fridays. On May 8, 1969, a Thursday, plaintiff went to Younger's premises at approximately 9:15 a. m. to pick up his pay check. However, he was told that it had not yet arrived from the main office in Houston. Plaintiff left the premises and returned later with some other employees, who had also come to pick up their checks.
While the group waited on the premises for the checks to arrive, plaintiff and Robert Jernigan, another waiting employee became engaged in horseplay with pocket knives. In attempting to close the knife against his right leg, plaintiff accidentally punctured his other leg. He severed the femoral artery and partially severed the femoral vein in that leg, and the leg was subsequently amputated above the left knee due to complications.
It has been stipulated that the plaintiff is totally and permanently disabled, that his rate of compensation would be at $45.00 per week, and that he incurred medical expenses as a result of the accident in the amount of $4,126.45. Therefore, the sole issue is whether plaintiff's injury occurred "by accident arising out of and in the course of his employment". LSA-R.S. 23:1031. It is axiomatic that cases involving these issues turn on the particular facts and circumstances of each case.
Younger contends that plaintiff was not in the course of his employment, because he was not working on the day of the accident. Younger argues that Friday was the normal pay day for employees at the Marrero branch office and that these employees who had come on Thursday had merely hoped to get their checks one day early.
It is uncontradicted that no checks were ever mailed to employees by Younger, and that employees received their checks at the premises. Plaintiff testified that he had always been paid on Thursdays since he had worked for defendant. His wife testified that he always brought home the money from his cashed pay check on Thursdays. Sterling Miller and Willie Henderson, fellow truck drivers, testified that they were always paid on Thursdays. Robert Jernigan, with whom plaintiff engaged in horseplay, testified that most persons were paid on Thursdays even though the regular pay day was on Friday.[1] Only Leo Clayton, who became terminal manager for Younger after the accident, testified that employees were paid on Fridays except in special circumstances. We therefore conclude that, regardless of whether Friday was "official pay day" or not, it is clear that the practice of the company at the Marrero branch was to pay employees on Thursdays and to require the employees to come to the company premises to receive their checks.
The requirement of the Compensation Act that an employee be injured by accident in the course of his employment refers to the relationship between that employment and the accident in terms of time *275 and place. In the present case a part of the routine of plaintiff's employment was his attendance at the employer's premises on Thursdays to receive his pay check. The evidence is uncontradicted that plaintiff was on the premises for the sole purpose of being paid, a purpose which certainly cannot be separated from his employment. The system by which employees were paid was an integral part of Younger's business practice.
We believe that an employee, who comes upon his employer's premises to receive his pay check because of a requirement or a custom established by the employer, and is injured while on the premises for that purpose, sustains the injury while in the course of his employment. This issue is not to be resolved by simply deciding whether an employer derived an economic benefit from the activity in which the employee was engaged at the time of the accident.
We distinguish Blade v. Mervis, 226 So. 2d 552 (La.App. 4 Cir. 1969) in which this court denied benefits to an employee who arrived at defendant's premises to pick up his check, entered into a game of bourre while the check was being processed, received his check and then continued to play cards until he was shot during an altercation. There, plaintiff's purpose in remaining after he received his check bore no relationship to his employment, and he therefore was outside the course of his employment when injured. However, in drawing this line, this court intimated that plaintiff would have been in the course of his employment if he had been injured while waiting for his check.
It is of no significance for purposes of determining "course of employment" that this brief but essential incident of the employer-employee relationship occurred on a normal day off. If plaintiff had worked a regular Monday through Friday schedule and received his pay by custom or requirement of the employer after work on Friday, and had been injured on the premises after work but while waiting for his check, he would clearly have been within the course of his employment. See generally Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966). We see no valid distinction between this hypothetical situation and the present case, since the employee was required to return to the premises on his day off to receive his pay. It is obvious that a person in plaintiff's income status requires his wages on the day that the wages are due. It is equally obvious that plaintiff was not a mere loiterer on or visitor to the premises, but rather occupied the status of a company employee engaging in company business.
Furthermore, the fact that plaintiff was injured while engaged in horseplay or immediately thereafter should not bar his recovery. While the trial court found "that he was injured while `horseplaying' and through his own gross negligence", we reject the concept of negligence in a compensation case. There is no evidence of any intent by plaintiff to injure himself or any other person, which would give rise to a special statutory defense. The employees simply engaged in horseplay during an idle period, while waiting to be paid.
The courts have consistently recognized that, during idle periods in the course of employment, working men will engage in jocular activities with fellow employees. There is general accord in the decisions that accidents occurring during horseplay in the course of employment also arise out of employment.[2]
In concluding that plaintiff was injured in the course of his employment, we observe that he was drawn to the premises by conditions of his employment. He was injured *276 not merely while he was on the premises, but while he was on the premises in touch with conditions and associations inseparable from employment. The risks of such associations and conditions were risks of his employment. Favre v. Werk Press Cloth Mfg. Co., 152 So. 694 (Orl.La.App. 1934).
Under these circumstances, it could be anticipated that horseplay could occur, since the workers could not be expected to stand by silent and still while waiting for their checks to become available. The risk of horseplay, being expectable under such conditions of employment, is a risk which arises out of employment.
We therefore conclude that the accident arose out of and was in the course of plaintiff's employment.
Accordingly, the judgment of the district court is reversed, and judgment is rendered in favor of plaintiff and against his employer and its insurer for compensation at the rate of $45.00 per week for 500 weeks, beginning May 8, 1969, for medical expenses in the amount of $4,126.45, and for all costs of these proceedings.
Reversed and rendered.
CHASEZ, Judge (dissenting).
I am in accord with the judgment and finding of facts of the District Judge and am therefore dissenting in this matter.
In his Reasons for Judgment the District Judge stated:
"In the Court's opinion, the most accurate description of the incident was given by Julius Williams, who was standing approximately fifteen feet from where Mr. Singleton and Mr. Jernigan were.
"In Mr. Williams' words, Mr. Singleton and Mr. Jernigan were `skylarking'. Mr. Singleton had a `big old long knife'. Mr. Williams said, and it appeared to him to be about an eight-inch long pocket knife.
"After some words, Mr. Jernigan reached for Mr. Singleton's right hand, the one holding the knife. Mr. Singleton pulled his arm away from Mr. Jernigan, Mr. Williams said, and swung it behind his back and right leg. This movement was so sudden and forceful that the blade punctured the inside of Mr. Singleton's left thigh.
"Mr. Williams insisted that Mr. Singleton and Mr. Jernigan were not fighting but instead were `playing'.
"While there were some conflicts in the testimony, these things were clear:
"(1) On Thursday, May 8, 1969, Mr. Singleton was not working and he was in defendant's yard for only one reason, to pick up his pay check;
"(2) That while Friday is the normal pay day, sometimes Younger Brothers' employees are paid on Thursdays if the checks have arrived from Houston;
"(3) That Mr. Singleton was not injured in the scope of his employment;
"(4) That he was injured while `horse playing' and through his own gross negligence.
"Petitioner's compensation claim is made because (1) he was in the yard hoping to receive his check a day before the usual pay day, and (2) the accident occurred on the employer's premises.
"While questionable issues are normally resolved in favor of the claimant in compensation cases, this Court knows of no decision going as far as the plaintiff in the instant case would like to stretch the limit of protection given employees. `Horse play' and `fooling around' are sometimes judicially tolerated in compensation matters, but the acceptable incidents have occurred while a man is either on the job or in the process of leaving the employer's premises after having finished the day's work.

*277 "Mr. Singleton was not engaged in his employer's business on May 8, 1969, and the necessities of his employer's business did not require him to be in the yard that day.
"Under these circumstances, Mr. Singleton's compensation claims must be denied."
I therefore respectfully dissent. The judgment of the Court a quo should be affirmed.
NOTES
[1] Even if plaintiff had arrived on Friday to be paid, this would still have been his day off.
[2] "The question of whether an accident resulting from horseplay arises out of the employment should not be answered without reference to the allied question of whether such an accident occurs during the course of the employment." Malone, Louisiana Workmen's Compensation, § 195, p. 240.