339 So.2d 917 (1976)
Johnny B. TURNER, Plaintiff-Appellant,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY et al., Defendants-Appellees.
No. 5696.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1976.
Rehearing Denied December 15, 1976.
Writ Granted January 14, 1977.
*918 Ford & Nugent, Howard N. Nugent, Jr., Alexandria, for plaintiff-appellant.
Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for defendants-appellees.
Before DOMENGEAUX, WATSON and HUMPHRIES, JJ.
WATSON, Judge.
In this workman's compensation case, an employee, who shot himself accidentally with a fellow employee's gun in the employer's parking lot, appeals from the trial court's determination that the accident did not arise out of his employment. Plaintiff is Johnny B. Turner. Defendants are: Turner's employer, The Town of Boyce, Louisiana; and its compensation insurer, United States Fidelity & Guaranty Company. After trial on the merits, the trial court ruled in favor of defendants and denied compensation benefits to plaintiff.
There is no dispute that plaintiff would be otherwise qualified to receive weekly compensation benefits in the amount of $65 per week, as well as medical benefits, if his accident were determined to be in the course of and arising out of his employment. The medical evidence in the record (see, particularly, the deposition of Dr. Lloyd G. Megison, a neurosurgeon of Shreveport, who testified that, by reason of the penetration by a bullet of the middle of the left side of the brain, plaintiff has permanent right hemiparesis) establishes total and permanent disability.
On February 17, 1975, the date of the accident, Turner was employed by the Town of Boyce in its utility department as a repairman, having various duties in connection with the electricity, gas, sewers and other services furnished by the municipality. At about 11:30 a.m., Turner and his superior, A. M. Coutee, the utility superintendent of the Town of Boyce returned from a job site to the Town warehouse or shop building; Turner went inside to work on some electrical materials and Coutee went into his office. Shortly thereafter, Coutee, Turner and three other employees, Shepherd, Mabry and Evans, walked outside to the parking lot, awaiting the noon whistle which customarily signaled the beginning of their lunch period. The warehouse and the parking lot are both owned by the Town of Boyce.
At this juncture, Evans produced a pistol which he had had inside the warehouse. Evans, also an employee of the town's utility department, had taken the gun out of his car earlier that morning, had borrowed a can of "WD-40" from a police officer employed by the town, one Davion, and had cleaned his gun in the warehouse. As the men stood on the parking lot, the superintendent, Coutee, asked to see the gun and Evans gave it to him for inspection. Then Turner, the plaintiff, asked to see the gun and Coutee either handed it to him or put it down on a truck hood where Turner picked *919 it up. Turner asked Evans for a cartridge. Evans gave Turner a cartridge and Turner put it in the gun. Some joking remark was made between Turner and Coutee about shooting out a street light or a light on top of the truck. Coutee, Evans, and the others present glanced away from Turner for some reason and, at that instant, the gun fired accidentally and struck Turner in the head, the bullet traversing a portion of his brain, but remarkably, failing to cause his death. Medical attention was obtained speedily and Turner received various treatments thereafter, although he remained, at the time of trial, totally and permanently disabled within the contemplation of the Louisiana Workmen's Compensation Act.
No compensation benefits were paid so Turner initiated suit against the town and its compensation insurer. Defense of the suit was based on the theory that the accident did not arise out of and in the course of Turner's employment. Turner also demanded penalties and attorney's fees, contending that the insurer had failed, arbitrarily and capriciously, to pay benefits.
The applicable statute is LSA-R.S. 23:1031, which provides in paragraph one, as follows:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated. * * *"
The trial court found the facts substantially as outlined above, emphasizing that, while the accident occurred on the employer's premises and during the hours of the employee's work day, Turner was not required to use or be exposed to a gun in performing his duties. Then, relying principally on its analysis of Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La., 1973), the trial court concluded, as we read the assigned reasons, that the accident occurred during the course of employment but did not arise out of it and was not compensable.
The issues to be decided on appeal are:
(1) whether the accident occurred in the course of the employment;
(2) whether the accident arose out of the employment; and
(3) if benefits are due, whether plaintiff is entitled to penalties and attorney's fees.
LSA-R.S. 23:1031, quoted in pertinent part above, is couched in general terms and details no criteria for measuring "in the course of" and "arising out of" employment. Therefore, we must examine the jurisprudence and the doctrine to obtain assistance in resolving the issues.
The first question, whether the accident was during the course of employment, is answered easily under the long-established rule that an accident is in the course of employment when it occurs during the hours of employment at a place contemplated by the employment. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932); Lisonbee v. Chicago Mill and Lumber Company, 278 So.2d 5 (La., 1973). In the present case, Turner was within the hours of employment. His supervisor and others testified that the noon whistle had not yet blown when the accident occurred. It is undisputed that the hours of employment were from 8:00 a.m. to 12:00 noon and from 1:00 p.m. to 5:00 p.m. The accident occurred at a place reasonably contemplated by the employment, that is, the parking lot owned by the Town adjacent to the utility warehouse. There was agreement among the witnesses that, if the employees concluded their duties prior to noon, they were under instruction by the Town officials to remain on the Town's premises until the whistle blew for lunch. Theoretically, they were there subject to being assigned to any duty or task which became necessary as they were waiting.
The question of whether the accident arose out of the employment is somewhat more difficult.
Our courts have decided many cases involving accidents on or near the job caused by knives or guns. There are three cases *920 whose analysis provides the greatest assistance in resolution of this question. These are: Lisonbee v. Chicago Mill and Lumber Company, supra, which is the latest expression of the Louisiana Supreme Court concerning the course of and arising out of features of the statute; LeCompte v. Kay, 156 So.2d 75 (La.App. 1 Cir. 1963), writ refused, 245 La. 91, 157 So.2d 233; and Singleton v. Younger Brothers, Inc., 247 So.2d 273 (La.App. 4 Cir. 1971), writ denied, 259 La. 59, 249 So.2d 202.
In Lisonbee, a night watchman, who was away from the company premises in violation of specific orders to the contrary, was shot by a desperado wielding a gun in the store where the watchman was buying a snack. The watchman was held not to be in the course of his employment. The Supreme Court emphasized the idea expressed by the leading authority on workmen's compensation law in Louisiana, Professor Wex S. Malone, that:
"A strong showing by the claimant with reference to the arise-out-of requirement may compensate for a relatively weak showing on the during-course-of requirement, or vice versa." 278 So.2d 7.
Also emphasized was the fact that, while Lisonbee was within the hours of his employment, he was not at the place of his employment. Thus, the court found that he was not in the course of employment, and then it turned to the question of whether the accident arose from his employment and this question was also resolved against the survivors of Lisonbee. The court found in discussing this feature of the case that:
". . . the shooting by a stranger, entirely unprovoked, which obviously compelled Lisonbee to draw his gun, had no relation whatsoever to the employment." 278 So.2d 10.
The defendants in the instant case, as well as the trial court, suggest that Lisonbee is authority for a resolution of the present claim against Turner. However, counsel for plaintiff has suggested some nine different distinguishing aspects. Without reviewing all of these, we note several distinguishing features. In Lisonbee, the accident occurred off the employer's premises; the plaintiff was in direct violation of company rules in leaving the premises; the shooting occurred at another place of business, totally unrelated to the employer's business; and the risk of Lisonbee being shot was not related in any respect to his employment.
In the present appeal, Turner was on the employer's premises; he was in violation of no employment regulations; (In fact, he was on the premises in direct response to the town's rule against leaving before the noon whistle was sounded.); the risk of Turner being shot was increased by the bringing of a pistol onto the premises by a fellow employee; and the risk of Turner being shot was not diminished by the employer's representative, the utility superintendent, who was present and who did not order the weapon removed or prohibit its handling.
LeCompte v. Kay, supra, is cited by counsel for defendants as being most closely analogous to the instant appeal. There, LeCompte had gone with two other men to the employers' hunting camp to assist in cleaning and general repair and renovation of the camp building. Substantially after working hours, LeCompte accidentally shot himself with a pistol. The Court of Appeal, First Circuit, denied compensation to Le-Compte's survivors, holding that the accident did not arise out of the employment because:
". . . the accident occurred after working hours while the employee was engaged in a purely personal endeavor, namely, his own amusement and recreation." 156 So.2d 75, at 81.
The court held that LeCompte's injury could be said to have occurred in the course of his employment since it happened on the employers' premises under circumstances which required LeCompte to be there after working hours, the camp being many miles removed from his home and LeCompte being required to spend the night there to await the next working day.
LeCompte is closer to the present case than is Lisonbee, although there are certain *921 features that can be distinguished. Le-Compte was not shot during working hours. He was only on the premises due to the remote location of the camp. Just prior to the accidental discharge of the gun, he was engaged in taking target practice for his own amusement. These features are distinguishable, although admittedly close to features in the present case where Turner was on the premises during working hours.
The third case, Singleton v. Younger Brothers, Inc., supra, is a knife case rather than a gun case, but the legal situation most closely approximates the instant appeal. Singleton was on the premises of his employer on a nonwork day for the purpose of picking up his paycheck. While waiting for the checks to arrive, he and a fellow employee engaged in horseplay with pocket knives and, in attempting to close his knife, plaintiff accidentally punctured his own leg, resulting in the subsequent amputation of the limb above the knee due to complications. The Fourth Circuit held that the employee, who customarily came to the employer's premises to pick up his paycheck, was in the course of his employment when injured. The court emphasized that the accident occurred under circumstances where he was on the premises of the employer under conditions or associations brought about by the employment.
"The risks of such associations and conditions were risks of his employment." 247 So.2d 273, at 276.
and the court concluded that:
"The risk of horseplay, being expectable under such conditions of employment, is a risk which arises out of employment." 247 So.2d 273, at 276.
The court in Singleton emphasized the fact that workmen who are idle for some reason or the other in the course of their employment will engage in horseplay. This parallels very closely the instant situation. During a moment of idleness, while waiting for the noon whistle to blow, pursuant to instructions from the mayor and aldermen of the Town of Boyce, Turner and his co-employees engaged in pursuits which are to be expected under the circumstances. One man happened to have a revolver on the premises. The representative of the employer was aware of and toleratedindeed handledthe weapon. Turner inspected it and in what amounted to horseplay, loaded the weapon, making a joking remark that he was going to shoot out a street light or a truck light and the weapon accidentally discharged.
Thus, in summary, the significant aspects of the situation which bear on the question of whether the accident can be said to arise out of the employment, are:
(1) that the gun was brought on the premises by a fellow employee;
(2) that it had been there for some time and had been cleaned on the premises;
(3) that the presence of the gun, while possibly not encouraged, was not forbidden or disapproved by the employer through the person of the utilities superintendent. (There was an effort by Coutee to suggest that he had told the owner of the gun that he should not have brought it to work, but a fair evaluation of his testimony and that of the other witnesses, is that this remark was made after the accident rather than before. This is not to suggest any negligence on the part of Coutee, because an inquiry into negligence either as to Coutee or as to plaintiff is, in our opinion, inappropriate to a resolution of the issues.)
Additionally, there is the circumstance that these workmen, who remained on the premises without any particular duties, were engaged in typical behavior; they were displaying a natural and expected human curiosity concerning an interesting possession, the revolver. Courts can notice typical human behavior, that a group of employees standing idle will find something with which to divert themselves: inspecting a new automobile; telling fishing tales; looking at passersby; playing mumbly-peg; pitching pennies; or the like.
Thus, we think, as did the court in Singleton, that the plaintiff and his fellows were doing what might be expected during his employment. He was where he was by reason of his employment, he was thrown *922 into association with the owner of the weapon by his employment, he was thrown into contact with it by his employment, (the presence of the gun was tolerated), and he accidentally shot himself. See also Favre v. Werk Press Cloth Mfg. Co., 152 So. 694 (La.App. Orleans 1934).
The rule is that, where an employee is in the course of his employment and where the accident has a reasonable connection with the employment (here, the fact that a fellow employee had a pistol at work), the accident is one arising out of the employment. The trial court erred, not in the resolution or evaluation of the facts, but in the application of the law to the facts.
Plaintiff has also urged on appeal that the defendants be cast for penalties and attorney's fees. By reason of the close legal questions involved, the defendant insurer can not be said to have denied the payment of benefits on an arbitrary or capricious basis. A judgment for penalties and attorney's fees is not appropriate under the circumstances.
The judgment dismissing plaintiff's claim is reversed and the following decree is entered:
It is ordered, adjudged and decreed that there be judgment in favor of the plaintiff, Johnny B. Turner, and against the defendants, Town of Boyce and United States Fidelity & Guaranty Company, jointly and in solido, in the amount of $65.00 per week, beginning February 17,1975, for a period of five hundred (500) weeks, together with legal interest on each past due weekly payment from due date until paid, and for medical, surgical and hospital benefits and treatments previously incurred or to be incurred by plaintiff, not to exceed the amount provided by law.
Defendants are cast to pay all costs of trial and appeal.
REVERSED AND RENDERED.