380 So.2d 727 (1980)
Sidney BAZLEY
v.
Sordo TORTORICH, Aetna Life and Casualty Co., and Fireman's Fund Insurance Companies.
No. 10757.
Court of Appeal of Louisiana, Fourth Circuit.
February 7, 1980.
Rehearing Denied March 17, 1980.
*728 Steven M. Koenig, New Orleans, for plaintiff-appellant.
Beard, Blue, Schmitt, Mathes, Koch & Williams, Melvin W. Mathes, New Orleans, for Fireman's Fund Ins. Companies, defendant-appellee.
McCann & Volk, John J. McCann, New Orleans, amicus curiae on behalf of Academy of New Orleans Trial Lawyers.
Before GULOTTA, CHEHARDY and HOOD, JJ.
CHEHARDY, Judge.
This is a case in tort wherein Sidney Bazley sues Fireman's Fund Insurance Companies (the insurer of a co-employee of the plaintiff), Sordo Tortorich and his insurer (Aetna Life & Casualty Co.) for personal injuries sustained as a result of an accident.
The district court sustained the defendant Fireman's Fund's exception of no cause of action on the ground that Mr. Bazley's exclusive remedy is under the Louisiana Workmen's Compensation Act against this defendant. Plaintiff's suit, therefore, as to his co-employee's insurer, was dismissed; and he now appeals.
Mr. Bazley alleges that on or about June 29, 1977, he was employed by the Jefferson Parish Sanitation Department and working in the course of his employment in the 500 block of Grefer Lane near its intersection with Jennie Street in Harvey, Louisiana. He further alleges that as he was attempting to step up to the rear of the garbage truck he was struck by a 1970 Chevrolet owned by Sordo Tortorich, which was proceeding north on Grefer Lane. Plaintiff also states that the street was a two-lane undivided one and that the garbage truck was stopped and blocking traffic, causing traffic travelling north to swerve around it. In an amended petition, the plaintiff further alleged that his co-employee was guilty of intentional acts, which resulted in Mr. Bazley's injury.
The issues in this case are:
1. Does Louisiana Revised Statute 23:1032, as amended by Act 147 of 1976, which extends tort immunity to any principal, employer, officer, director, stockholder, partner or employee of an employer contravene Article 1, Section 22 of the Louisiana Constitution of 1974 and the United States Constitution because it constitutes a denial to workers of equal protection and due process?
2. Can this court consider a constitutional issue concerning a statute that was not specifically pleaded in the trial court?
3. Did the plaintiff allege sufficient facts for a trier of fact to possibly conclude that the accident was caused by the intentional acts of his co-employee?
Regarding the necessity of having to specifically plead the unconstitutionality of *729 a statute for it to be considered by the appellate court, in Osborn Funeral Home v. Louisiana St. Bd. of Embalm., 194 So.2d 185, 188 (La.App. 2d Cir. 1967), the court observed:
"* * * The rule is, however, well established that he who urges the unconstitutionality of a statute not only must especially plead its unconstitutionality but must show specifically wherein it is unconstitutional, and that such issues not presented by the pleadings are not properly before the court and consequently cannot be considered on appeal. A Sulka & Co. v. City of New Orleans, 208 La. 585, 23 So.2d 224, 229 (1945); Stovall v. City of Monroe, 199 La. 195, 5 So.2d 547, 552 (1941); Mouledoux v. Maestri, 197 La. 526, 2 So.2d 11 (1941); State v. Great Atlantic & Pacific Tea Co., 190 La. 925, 183 So. 219 (1938); City of Shreveport v. Pedro, 170 La. 351, 127 So. 865 (1930); State ex rel. Curtis v. Ross, 144 La. 898, 81 So. 386 (1919); Mitchell v. Louisiana State Board of Optometry Examiners (La.App.) 146 So.2d 863, 869 (3d Cir. 1962); DeBlanc v. DeBlanc (La.App.) 18 So.2d 619, 623 (Orl.1944)."
However, in the present case, the unconstitutionality of the statute in question (LSA-R.S. 23:1032), although not pleaded by the plaintiff, was raised only in response to Fireman's Fund's urging of the exception of no cause of action. In Butler v. Flint-Goodridge Hospital of Dillard University, 347 So.2d 1308 (La.App. 4th Cir. 1977), the court entertained an appeal on the constitutionality of the Revised Statute which requires submission of a medical malpractice claim to a medical panel prior to institution of a suit. There, the unconstitutionality of the statute had been raised in the trial court via an opposition to an exception of prematurity filed by defendants. (This court also held that the Attorney General need only be impleaded when declaratory relief has been sought by the plaintiff in regard to the statute in question.)
Therefore, the question of unconstitutionality of LSA-R.S. 23:1032 as amended by Act 147 of 1976 is properly before this court. LSA-R.S. 23:1032, as amended by Acts 1976, No. 147, § 1 says:
"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
"Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
"The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
Under this section, therefore, an employee cannot sue an employer or any officer, director, stockholder, partner or employee of such employer or principal in tort for injuries sustained on the job, but must resort to a workmen's compensation claim as his exclusive remedy, unless the act of the co-employee was "intentional."
If we interpret this section to mean that when the defendant officer, agent or employee has breached his duty to an employee or co-employee through personal acts, he *730 is liable for such acts, then it is possible for this court to uphold LSA-R.S. 23:1032 as amended as constitutional. This court will therefore be following the mandate that:
"The general rule is that every statute is presumed to be constitutional, and the court is bound to uphold the constitutionality of a statute when it is reasonably possible to do so. * * *" City of Natchitoches v. State, 221 So.2d 534, 544 (La.App. 3d Cir. 1969).
This circuit in Johnson v. Narcisse, 373 So.2d 207, 209 (1979), observed regarding LSA-R.S. 23:1032 as amended by Act 147 of 1976:
"`In discussing this problem, the court in Guidry v. Aetna Casualty and Surety Co., 359 So.2d 637 (La.App. 1st Cir., 1978), writ denied, 362 So.2d 578 (La.1978), stated that in order to constitute the requisite intent to result in civil liability, the defendant must have entertained a desire to bring about the result which followed and he should have believed that the result was substantially certain to follow. The court then held that although the statute (LSA-R.S. 23:1032) does not affect an employer's tort liability for his intentional acts, "Plaintiff's petition fails to state a cause of action for the reason that it does not allege that the acts of Charles Dickey (the fellow employee) were done with the requisite intent to cause injury to plaintiff." Guidry, supra. Therefore, it is the opinion of this Court that the plaintiff in the instant case does not state a cause of action.'"
In Johnson, supra, the issue of constitutionality was not before the court and under that circumstance, its adherence to the rule of Guidry, supra, was proper. However, the question of constitutionality is before the present court and is being addressed.
We do not feel that it is necessary that a co-employee or executive officer "have entertained a desire to bring about the result that followed" in order for his actions to be considered "intentional" under the amended statute. Such an interpretation would, in effect, extend total immunity in tort to partners, executive officers and co-employees for their negligent acts against co-workers and would result in an unconstitutional interpretation of the statute as amended by the 1976 act.
Webster's New International Dictionary, Second Edition, 1934, defines the word "intentional" thus:
"Intention, which often suggests little more than what one means or proposes to do, implies less determination than purpose, less definite plan or prearrangement than design, which frequently adds the implication of crafty or artful scheming."
The court said in Weir v. Commissioner of Internal Revenue, 109 F.2d 996, 997 (Circuit Court of Appeals, 3d Cir. 1940):
"* * * `* * * "Intent" may be used in at least three distinct legal meanings. It may designate simply the exercise of will power necessary to cause muscular or physical movement. This concept is, of course, irrelevant in the field of tax law. Secondly, it may denote the immediate result desired by the actor. Thirdly, it may signify the ultimate reason for aiming at that immediate objective. At this point, however, intent shades into motive, which is really the ulterior intent or the cause of the intent. Intent, in other words, is the object of the act; motive, in turn, is the object or spring of the intent. * * *'"
We do not believe the legislature's intent was to read malice into the word "intentional."
In the present case the plaintiff alleges that his co-worker was guilty of "intentional acts" by:
Operating an unsafe and hazardous garbage truck;
Continuing the operation of the aforesaid garbage truck when he acknowledged that it was unsafe and hazardous;
Operating the said garbage truck in the absence of a working horn;
Conscious disregard of safe and reasonable mechanical and electrical maintenance standards;

*731 Failure to keep a proper lookout;
Failure to see what he should have seen;
Failure to avoid the collision;
Stopping the garbage truck in a dangerous position;
Failing to stop the garbage truck on the shoulder of the road; and
Failing to warn the plaintiff of an oncoming danger.
We hold that the plaintiff has alleged sufficient intentional acts on the part of his co-employee to state a cause of action. We therefore must reverse the trial court's dismissal of his case on the exception of no cause of action.
In the recent case of Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387 (La.1978):
"Where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. See Gibbes v. Zimmerman, 290 U.S. 326, 332, 54 S.Ct. 140, 78 L.Ed. 342 (1933); Pritchard v. Norton, 106 U.S. 124, 132, 1 S.Ct. 102, 27 L.Ed. 104 (1882). However, where the injury has not yet occurred and the cause of action has not yet vested, the guarantee of due process does not forbid the creation of new causes of action or the abolition of old ones to attain permissible legislative objectives. See Silver v. Silver, 280 U.S. 117, 122, 50 S.Ct. 57, 74 L.Ed. 221 (1929). Our jurisprudence has recognized the validity of legislative regulation of causes of action, including replacement and even abolition, that one person may have against another for personal injuries. See Ancor v. Belden Concrete Products, Inc., 260 La. 372, 256 So.2d 122 (1971); Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (1919); see also Heirs of Fruge v. Blood Services, 506 F.2d 841 (5th Cir. 1975)."
It is clear that the legislature can abolish a cause of action "to obtain permissible legislative objectives." However, if the word "intentional" is construed as immunizing executive officers and co-employees from all tort liability that is the result of a breach of a duty to the employee suing, then we are giving an unconstitutional interpretation to the 1976 act amending the statute.
What was the State's objective in enacting its Workmen's Compensation laws, generally, and, more specifically, this particular section; and does this section bear a rational relationship to those interests?
The Louisiana Supreme Court, in explaining generally the Workmen's Compensation Statute, said in Atchison v. May, 201 La. 1003, 10 So.2d 785, 788 (1942):
"* * * The act, which is social legislation, was passed for the joint benefit of labor and management in order to insure that employees who became disabled as a result of their labors in hazardous industries would have, during the period of their disability, a weekly income for the upkeep of themselves and their families. It was also deemed advisable to provide for compensation, in cases of death, to the persons dependent upon the employee for support so that these persons would not be entirely bereft of funds during the period of time following the employee's death when they, of necessity, were compelled to reconstruct their lives and seek a means of support,thus avoiding the possibility that these persons would become public charges. In order that this end might be accomplished, the Legislature provided for sacrifices to be made by both the employer and the employee. The employee was required to waive the right granted him under the general law, Article 2315 of the Civil Code, in consideration of receiving a fixed percentage of his wages during the period of his disability. The employer, on the other hand, was deprived of the defenses afforded to him by the general law and he was assured that, in case any of his employees were injured, they would be entitled to no more than the amount stipulated in the statute as compensation during the period of disability. * * *"
It is difficult to imagine, therefore, how an extension of tort immunity to include *732 negligent acts of all executive officers and co-employees, which result in an employee's injury, could possibly serve to further the ends discussed in Atchison, supra.
Regarding the equal protection question, the court further stated in Burmaster, supra, on pages 1386 and 1387:
"Both the state and federal constitutions mandate equal protection of the laws. U.S.Const. amend. XIV; La.Const. art. 1, § 3. The equal protection guarantee of our constitution, however, was intended only as a restatement of the federal equal protection clause. State v. Barton, 315 So.2d 289 (La.1975).
"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated. Succession of Robins, 349 So.2d 276 (La.1977). Where, as here, there is no involvement of a `suspect classification' or `fundamental right,' traditional equal protection analysis sustains a classification if it is not arbitrary and bears a rational relationship to a legitimate state interest. Everett v. Goldman, 359 So.2d 1256 (La.1978); Succession of Robins, supra; State v. Everfield, 342 So.2d 648 (La.1977). The legislature has a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. The constitutional safeguard of equal protection is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective. McGowan v. Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)."
If LSA-R.S. 23:1032 is interpreted as extending total immunity in tort to executive officers and co-employees, then an arbitrary class of third parties who are immune to suit will be created, while withholding this immunity in tort from other third parties. The creation of this class, moreover, will bear no rational relationship to a legitimate state interest.
The courts have said, in such cases as Veillion v. Knapp & East, 158 So.2d 336 (La.App. 3d Cir. 1963), writs refused January 21, 1964, at page 340:
"`I can readily understand how an employer, who finds an employee, to whom he is paying workmen's compensation, working on another job as an ironworker without any restrictions so far as his job referral is concerned, would find it hard to understand why he should continue to pay such a man workmen's compensation. This is particularly true inasmuch as compensation, in principle, is supposed to cover a loss of earnings resulting to an employee during the time of his disability, and charge such loss to industry as an ordinary business expense. It is not necessarily designed to make him whole again. * * *'" (Emphasis ours.)
This, of course, is the reason that the workers' rights have been preserved against third parties who are not the employer. To limit those rights by extending tort immunity to such an extent would cripple our Civil Code Article 2315.
As cited above in Atchison, supra, there was a substantial quid pro quo inherent in the original Workmen's Compensation Act. Both employer and employee gave up rights and in return received certain benefits from the act. Therefore we do not question that acts of an employer must be "intentional" within the meaning of Guidry, supra, before such employer can be liable in tort. But where is the quid pro quo for the further exemption of executive officers and co-employees from tort liability?
In Green v. Liberty Mut. Ins. Co., 352 So.2d 366, 369 (La.App. 4th Cir. 1977), writ refused, La., 354 So.2d 210 (1978), the court said:
"* * * We do not deem Act 147 of 1976 a clearer restatement of the original section of the compensation law. Rather we think it is a change * * *."
Regarding the work of the Louisiana Legislature for the 1976 Regular Session, 37 La.L.Rev. 89, 183 said:
"Although the new provision decreases the avenues of relief open to injured employees, the increased benefits made possible by the 1975 workmen's compensation amendments might be sufficient to *733 provide for employees so that the additional tort remedies formerly allowed by the courts are no longer necessary.

* * * * * *
"Perhaps as a response to the legislation limiting the availability of tort suits by an injured employee, the House and Senate considered, but did not pass, bills which would have increased available compensation benefits. The proposals would have required that the employer pay double the weekly benefits due to an employee if an injury resulted from the employer's violation of a safety rule, his failure to provide a safety device, or some gross negligence on the part of a supervisory employee. * * *"
If we extend tort immunity this far, there will be no quid pro quo provided for these decreased avenues of relief for employees. Perhaps if the proposals for double payment of benefits had passed, however, there might have been a constitutionally required substitute. Moreover, the increased benefits of the 1975 amendments do not provide a quid pro quo since they were passed a whole year before the 1976 amendment.
Article 1, Section 22 of the Louisiana Constitution of 1974, states:
"All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights."
This does not create tort actions but simply provides that when tort actions are created by the legislature, people have recourse to the courts to enforce rights given them in LSA-Const. 1974 art. 1, § 22. The statute being attacked here is an act of the legislature, and we find no constitutional infirmity as to that statute. Our concern, however, is to interpret the meaning of the statute and particularly the meaning of the word "intentional."
It is our obligation to give a constitutional interpretation to the meaning of "intentional" as used in this statute if such is possible. We do not find this to be a problem. If the legislature had intended total immunity under any circumstances for such offenses it could have done so.
However, in ascribing the interpretation we give herein to the word "intentional" as used in LSA-R.S. 23:1032 we are able to maintain the constitutionality of this statute as amended.
In other words, any action of an executive officer, principal, director, stockholder, partner, or co-employee, which, if committed by a third party, would cause that third person to be liable in damages to an injured employee, then such action will also render liable such executive officer, principal, director, stockholder, partner, or co-employee.
Therefore, stated another way, we interpret the word "intentional" as used in LSA-R.S. 23:1032 as amended by acts of 1976 No. 147, Section 1 as follows: The only duty which an executive officer, principal, director, stockholder, partner, or co-employee of a corporation owes to a third person, whether he be an employee of the corporation or a complete stranger, is the same duty to exercise due care not to injure him which any person owes to another. If an injury is sustained by a third party as the result of the independent negligence of the corporate officer, or as the result of a breach of the duty which that officer, as an individual, owes to the third party, then the injured third party may have a cause of action for damages against the officer personally. See LSA-C.C. arts. 2315 et seq. Insofar as the personal liability of the corporate officer to the third party for damages is concerned, however, it is immaterial whether his breach of duty towards the third person also constitutes a breach of duty to the corporation.
Accordingly, therefore, we reverse the trial court's dismissal of the plaintiff's case on the exception of no cause of action, and we remand the case to the lower court for trial on the merits. All costs are to await final disposition of this matter.
REVERSED AND REMANDED.
*734 GULOTTA, J., concurs with written reasons.
HOOD, J., concurs in the result.
GULOTTA, Judge, concurs.
I concur. I am in full accord with the reasoning that R.S. 23:1032 as amended, does not confer total immunity from liability upon executive officers and co-employees. The petition in this case alleges acts on the part of the co-employee, which if committed by a third party, would cause that third person to be liable in damages. I am of the opinion that under these circumstances an executive officer or employee may be liable. The petition in my opinion states a cause of action.
HOOD, J., concurs in the result.