392 So.2d 741 (1980)
George CITIZEN, Plaintiff-Appellant,
v.
THEODORE DAIGLE & BROTHER et al., Defendants-Appellees.
No. 7935.
Court of Appeal of Louisiana, Third Circuit.
December 17, 1980.
*742 Shelton & Legendre, Aubrey E. Denton, Lafayette, for plaintiff-appellant.
Cooper & Sonnier, John E. Ortego, Abbeville, Edwards, Stefanski & Brousse, Homer E. Barousse, Jr., Crowley, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX, and SWIFT, JJ.
DOMENGEAUX, Judge.
Plaintiff, George Citizen, sued his former co-employee, James Cormier, and Cormier's personal homeowner's liability insurer, Travelers Insurance Company, for injuries sustained as a result of a shooting accident which occurred on the morning of February 2, 1978, at their employer's place of business.
Plaintiff originally filed suit against his employer, Theodore Daigle & Brother, Inc., and Daigle's workmen's compensation insurer, Sentry Insurance Company, for workmen's compensation benefits. His petition averred in the alternative, and only in the event the court determined that plaintiff was not entitled to compensation benefits, that his injuries were caused by the intentional acts of Cormier, although he further alleged that the injuries he received were unforeseeable and were not intended by Cormier. The trial against all defendants was conducted January 30, 1980. Prior to a decision by the court, plaintiff settled his workmen's compensation claim for $25,000.00 and released Daigle and Sentry. This release was approved by Judge Fontenot on March 26, 1980.[1] Thereafter, on *743 March 27, 1980, Judge Ware assigned reasons for judgment wherein he held that plaintiff's only remedy was for workmen's compensation. A judgment to that effect, in favor of Cormier and Travelers, was signed on April 8, 1980. From that adverse judgment, plaintiff has appealed.

FACTS
All important facts are undisputed. On the morning of the accident, defendant Cormier was preparing a Benjamin pellet rifle for shipment back to the manufacturer. The rifle had been returned to George Duplechain, another Daigle employee, a day or two earlier by a customer who claimed the gun was defective because pellets would get lodged in the barrel. Duplechain test-fired the rifle several times but no pellets were discharged. Later, Duplechain told Cormier only that when he test-fired the gun no pellets were discharged. Cormier then testfired the rifle with the same results. The record establishes that neither man loaded the gun prior to test-firing so they were unaware that any pellet was actually lodged in the barrel. Furthermore, the record does not indicate that Cormier knew the nature of the defect prior to the accident. Duplechain knew, but the testimony does not establish that Cormier was told that the gun had been returned because pellets became lodged in the barrel.
Shortly before the accident Cormier was standing at a table near the back of the store, recording pertinent information about the gun onto a merchandise return sheet, when plaintiff entered the room from the back door. As he neared the table at which the defendant was standing, he began conversing with him. The gun lay on the table. Cormier indicated to Duplechain, who witnessed the entire incident, that he wanted to scare the plaintiff. To accomplish that goal, defendant picked up the gun, pumped it three times, and from waist level he pointed it in plaintiff's direction and fired when plaintiff was approximately four feet away from the defendant. To defendant's great surprise, a pellet was discharged from the gun and struck plaintiff in the left upper thigh region. Plaintiff received serious injuries to his left leg as a result of the shooting accident.
It is uncontested that Cormier did not intend to inflict injury or pain upon Citizen. He desired only to scare plaintiff. Plaintiff's petition acknowledges that defendant did not intend to injure plaintiff. The petition, in fact, avers that the injuries were unforeseen and occurred only because the pellet rifle was defective.
Following a trial on plaintiff's tort suit against Cormier, the trial court, relying upon Bourque v. Duplechin, 331 So.2d 40 (La.App. 3rd Cir. 1976), held in favor of defendants because the injury to plaintiff was neither expected nor intended. The court believed that Cormier's action constituted "horseplay" and was therefore within the course and scope of his employment. The court concluded that plaintiff's only claim was for workmen's compensation benefits as provided in La.R.S. 23:1032. We affirm.

ISSUES ON APPEAL
With respect to the rights and remedies available to an injured employee, under the Workmen's Compensation Act La.R.S. 23:1032 provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.

*744 Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.

The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee or such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section." (Emphasis added).
According to paragraph 1 of Section 1032, an employee who suffers an accidental injury arising out of and in the course of his employment is generally limited to his workmen's compensation claim against his employer, even if his injury was occasioned by a fellow employee. Paragraph 2 excepts from this general rule any injury which results from an intentional act on the part of a fellow employee. Paragraph 3 further provides that a fellow employee who is not engaged in the normal course and scope of his employment when the injury occurs is not immune from suit by his injured fellow worker. Therefore, Cormier will be responsible for the injury he caused to plaintiff if his act was an "intentional act" under Section 1032, or if he was not in the normal course and scope of his employment when the injury occurred. Thus, the following issues are raised by this appeal: (1) Did defendant Cormier's act constitute an "intentional act" within the meaning of La. R.S. 23:1032? and (2) Whether or not his act was an "intentional act", was defendant Cormier engaged in the normal course and scope of his employment at the time of the injury to the plaintiff, George Citizen?

INTENTIONAL ACT In the very recent case of McGuire v. Honeycutt, 387 So.2d 674 (La.App. 3rd Cir. 1980), this Court was faced with the issue of what elements are necessary to constitute an intentional act under La.R.S. 23:1032. That case involved substantially the same issues involved herein. There, plaintiff was in an automobile being driven by defendant, a fellow employee. The parties were transporting an inmate from the Department of Corrections facility to the Huey P. Long Memorial Hospital on a dark rainy night. Defendant had turned on the vehicle's flashing lights and was driving at a speed in excess of the posted speed limit when he ran through a red light at an Alexandria intersection. A vehicle with the right-of-way crashed into the car occupied by plaintiff, defendant, and the ill inmate, causing plaintiff's injuries. Plaintiff sued the defendant in tort, alleging that defendant's intentional act of running the red light caused his injuries. The trial court sustained plaintiff's position. We reversed by holding that defendant's act was not an "intentional act" within the meaning of La. R.S. 23:1032. We cited with approval the First Circuit case of Guidry v. Aetna Casualty & Surety Company, 359 So.2d 637 (La. App. 1st Cir. 1978), writ denied 362 So.2d 578 (La.1978), and we adopted that Court's definition of "intentional act" for the purposes of La.R.S. 23:1032, as follows:
"`To constitute the requisite intent to result in civil liability, the defendant must have entertained a desire to bring about the result which followed and he should have believed that the result was substantially certain to follow. See Monk v. Veillon, 312 So.2d 377 (La.App. 3rd Cir. 1975); Prosser, Law of Torts, (West 1971) pp. 31-32.'
See also, Tobin v. Jacobson, 369 So.2d 1161 (La.App. 1st Cir. 1979)."
387 So.2d 674, 678.
We agree with and will follow the definition of "intentional act" as set forth in Guidry and adopted by McGuire.[2]
*745 The record herein does not establish that Cormier committed an intentional act within the above definition. While his actions in pointing and firing an "unloaded" gun at the plaintiff may amount to negligence, they cannot be deemed intentional because defendant Cormier did not entertain a desire to bring about the result which followed. Plaintiff admitted as much in his petition for damages. Defendant had no quarrel with the plaintiff and, in fact, he and the plaintiff were engaged in friendly conversation immediately prior to the shooting accident. Duplechain testified that he worked with both plaintiff and defendant for three years and observed that their relationship at work was friendly. He also testified that horseplay among the employees was commonplace.
Furthermore, we do not think Cormier should have believed the result was substantially certain to follow because he believed that the gun was unloaded. A day or two before the shooting Duplechain had test fired that same gun three or four times but no pellets were discharged. Also prior to the shooting, Cormier had test fired the gun at least once with the same resultno pellets were discharged. Defendant did not load the gun and did not know that a pellet might be lodged in the barrel. Therefore, he had every reason to believe that the gun was not loaded when he aimed and fired it at the plaintiff.
Plaintiff cites the case of Bazley v. Tortorich, 380 So.2d 727 (La.App. 4th Cir. 1980), in support of his position that plaintiff's act was intentional. Insofar as it may conflict with the holding herein, we are inclined to disagree with the Bazley decision.

WAS DEFENDANT ACTING OUTSIDE THE NORMAL COURSE AND SCOPE OF HIS EMPLOYMENT?
If defendant Cormier was acting outside the normal course and scope of his employment at the time of the injury, he would enjoy no immunity to suit in tort by plaintiff. However, we find for the following reasons that Cormier was acting within the normal course and scope of his employment and is therefore immune to suit in tort by Citizen. In so doing we again rely upon the McGuire case, which had occasion to discuss this issue also. Therein we said:
"Since we have determined that the `intentional act' exception does not apply, we must now determine whether Welch was acting outside the normal course and scope of his employment. If so, Welch would have no immunity to suit in tort by McGuire.
* * * * * *
Plaintiff argues that by using the adjective `normal' to modify the term `course and scope of employment' the Legislature limited the ambit of immunity from tort liability provided in LSA-R.S. 23:1032. He argues that since the trial judge found that the acts performed by Welch leading to the accident were not regularly performed by Welch in the course of his employment Welch is not immune from tort liability for harm resulting from those acts.
We disagree. The purpose of Act 147 of 1976 amending LSA-R.S. 23:1032 was to extent tort immunity not only to the employer but also to any principal, officer, director, stockholder, partner or employee of an employer. The act closed the loophole which allowed `executive officer' suits by eliminating the right to tort recovery in cases where the Compensation Act is applicable. If we adopt plaintiff's argument, we will open `another amorphous loophole'5 which we believe would not be consistent with the legislative intent to restrict tort liability for co-employees and providing for recovery by workmen's compensation.
5Malone and Johnson, Louisiana Civil Law Treatise, Vol. 14, Worker's Compensation Law and Practice (2d Ed. 1980) § 364, p. 156."
We find it helpful to reproduce the discussion of this issue from the new workmen's compensation law treatise alluded to in McGuire. The distinguished writers of *746 that treatise, commenting on the language of Section 1032, observed:
"... It is not clear whether the use of the word `normal' is intentional and is meant to convey some meaning other than that officers may not use this immunity as a shield in a tort suit involving a non-work-related injury. It remains at least theoretically possible to argue that an officer who goes outside of his `normal' duties and negligently injures an employee might be liable in tort. Such an officer might well still be insured under the standard liability policy issued to an employer, which often insures an executive officer, director or stockholder `while acting within the scope of his duties as such. * * *' The argument, of course, would be that his duties are broad, but his `normal duties', as to which he has immunity, might be more specific. One hopes that this rather tenuous argument, which would open another amorphous loophole, will not be accepted.

The substantial closing of this loophole is probably, on balance, a wise move...."[3] (Emphasis added).
Plaintiff herein seeks to widen this loophole by arguing that defendant's actions in aiming and firing a pellet rifle at a fellow employee is outside the normal course and scope of his employment. We recognize that defendant was not employed for that purpose, but we believe Cormier is nevertheless immune from tort liability in this instance because his actions amounted to nothing more than horseplay.
The jurisprudence abounds with cases in which an employee's injury was held to have arisen out of and occurred during his employment, even though the injuries resulted from conduct which bore no real relationship to the work being done. Schexneider v. General American Tank Co., 5 La.App. 84 (Orl.Cir.1926); Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117 (1930); Favre v. Werk Press Cloth Mfg. Co., Inc., 152 So. 694 (La.App.Orl.Cir.1934); Singleton v. Younger Bros., Inc., 247 So.2d 273 (La.App. 4th Cir. 1971), cert. denied, 259 La. 59, 249 So.2d 202.
The Schexneider case, supra, remarked:
"It is not to be supposed that a crew of men could be obtained unless some of them during working hours would play practical jokes on their fellow workmen, especially if such men were red-blooded Americans."
5 La.App. 84, 88.
The Court in Favre, supra, also remarked that horseplay is an expectable incident of work.
In discussing the above cases, Malone and Johnson, Vol. 13, § 197, at page 411, make the following comment:
"The very observation that the risk of horseplay is an expectable one and hence arises out of the employment contemplates the fact that some employee must be expected to start the game, and it should be immaterial whether this person is the victim of some other worker." (Emphasis added).[4]
We recognize that those cases which had occasion to discuss horseplay did so in the context of an employer seeking to avoid having to pay workmen's compensation to an employee injured as the result of horseplay. None of them discussed whether a coemployee engaged in horseplay is acting within the normal course and scope of his employment when his actions injure another employee. However, we perceive no distinction significant enough to warrant a conclusion that a co-employee who accidently causes an injury to another employee as a result of horseplay is acting outside the normal course and scope of his employment. We therefore agree with McGuire and the writers of the treatise in attaching no special importance to the word "normal" in the third paragraph of Section 1032.

CONSTITUTIONALITY OF LA.R.S. 23:1032
The constitutional issue will not be considered on appeal since it was not timely *747 raised. Jarred v. Jarred, 355 So.2d 566 (La. App. 3rd Cir. 1978).

DECREE
For the above and foregoing reasons the judgment of the district court which held that plaintiff's only remedy is workmen's compensation is affirmed. Plaintiff's tort suit against his former fellow employee, the defendant James Cormier, and his personal homeowner's liability insurer, Travelers Insurance Company, is hereby dismissed. All costs are assessed against plaintiff.
AFFIRMED.
NOTES
[1] Thus, Daigle and Sentry are no longer parties to this suit. Hereinafter, "defendant" shall refer to Cormier and/or Travelers.
[2] We do not rely upon Bourque v. Duplechin, supra, as the trial court did, because McGuire is much closer factually to the instant case than Bourque is, and because Bourque was concerned with a regular tort claim rather than an interpretation of La.R.S. 23:1032. However, we note that the trial court did not have the benefit of the McGuire case since that decision was rendered after the trial court rendered judgment in the instant case.
[3] Malone and Johnson, Louisiana Civil Law Treatise, Vol. 14, Workers' Compensation Law and Practice (2d Ed. 1980) § 364, p. 156."
[4] The word "some" was emphasized by the treatise writers.