418 So.2d 598 (1982)
George CITIZEN
v.
THEODORE DAIGLE AND BROTHER, INC., et al.
No. 81-C-0156.
Supreme Court of Louisiana.
July 2, 1982.
Rehearing Denied September 3, 1982.
*599 Aubrey E. Denton, Shelton & Legendre, Lafayette, for applicant.
John E. Ortego, Cooper, Sonnier, Ortego, Hebert & Woodruff, Abbeville, Homer Ed Barousse, Jr., Crowley, for respondents.
LEMMON, Justice.
The principal issue in this case is whether plaintiff's coemployee's act of pointing and shooting a gun at plaintiff, as a bit of horseplay during working hours while the coemployee was packaging the gun for shipment, constituted an intentional act within the contemplation of R.S. 23:1032, so that the coemployee is liable in tort for the damages sustained by plaintiff as a result of the shooting.
James Cormier and plaintiff were employed in a hardware store owned by Theodore Daigle and Brother, Inc. Several days before the incident, a customer had returned the rifle that had been purchased from the store, complaining that it was defective. Another clerk had tested the gun and determined that it would not fire.
As Cormier was performing his assigned duty of packing the defective rifle for shipment to the manufacturer, plaintiff entered the store through the back door. Intending a practical joke to frighten plaintiff, Cormier checked the chamber to make sure the gun was not loaded and then fired the rifle at the floor to test the rifle further. Then Cormier jokingly aimed the rifle at plaintiff and fired. A pellet, which had lodged in the barrel of the gun, discharged and struck plaintiff in the upper leg, causing serious injury.
Plaintiff filed this suit against his employer for workmen's compensation benefits. Alternatively, he named as defendants Cormier and Cormier's homeowner's insurer, seeking recovery of tort damages and alleging that the injury was caused by an intentional act of a coemployee outside the normal course and scope of his employment. After trial but before judgment, plaintiff settled his workmen's compensation claim and dismissed the action against his employer.
Plaintiff's suit against the remaining defendants (Cormier and his insurer) was dismissed after trial, the court finding that Cormier's conduct constituted gross and wanton negligence, but that the injury to plaintiff was neither expected nor intended. The court further found that the accident occurred while the workers were engaged in "horseplay" in the course of employment and that plaintiff's exclusive remedy was for workmen's compensation benefits, as provided in R.S. 23:1032.
The court of appeal affirmed, holding that plaintiff's injury, which arose out of and occurred in the course of his employment, *600 did not result from an intentional act of a coemployee. 392 So.2d 741. We granted certiorari to determine whether plaintiff's injury resulted from an "intentional act" of a coemployee within the meaning of R.S. 23:1032 and whether the coemployee was engaged at the time within the "normal course and scope" of his employment. 398 So.2d 527.
Prior to 1976, R.S. 23:1032 afforded tort immunity to the employer of the injured employee, but the employee was free to seek tort recovery against third persons. Act 147 of 1976 amended R.S. 23:1032 to extend tort immunity to any principal, officer, director, stockholder, partner or employee of the employer. The purpose of the act was to foreclose executive officer suits for tort recovery in work-related accidents. W. Malone and H. Johnson, 14 Louisiana Civil Law TreatiseWorker's Compensation Law and Practice § 384 (2d Ed. 1980). The 1976 amendment, however, provided an exception to the immunity when the liability of the employer, or the principal officer, director, stockholder, partner or employee of the employer, results from an "intentional act" (in which case the liability of such party for his intentional act is not affected by the statute), or when the person causing the injury was not engaged in the "normal course and scope of his employment" at the time of the injury.[1]
In Bazley v. Tortorich, 397 So.2d 475 (La. 1981), this court defined the term "intentional act" within the context of R.S. 23:1032. Considering the term in light of the legislative aim to broaden the class of defendants who were afforded tort immunity under the statute, this court concluded that "intentional act" should be interpreted according to the generally accepted meanings of intentional tort in the field of civil liability. The Bazley decision rejected plaintiff's argument that intentional act should be equated with "voluntary act" and formulated the following definition to be applied under the statute:
"The meaning of intent in this context is that the defendant either desired to bring about the physical results of his act or believed that they were substantially certain to follow from what he did." 397 So.2d at 482.
Applying the statute as interpreted in Bazley to the facts of this case, we hold that Cormier's shooting of plaintiff was not an "intentional act" as contemplated by R.S. 23:1032. The testimony at trial indicates that Cormier pointed the gun at plaintiff with the sole intent to frighten plaintiff, not to shoot him.[2] Cormier neither *601 desired to bring about the injury to plaintiff nor knew that the injury was substantially certain to result from what he did. Before firing the rifle, he was told that it would not discharge, and he even test-fired the gun himself with similar results. His only intent was to "scare" the plaintiff, and we cannot say that he should have believed when he pulled the trigger of the unloaded rifle that injury was substantially certain to follow.
Plaintiff argues, however, that this was an intentional assault (the creation of a reasonable apprehension of imminent harm), and we agree that Cormier intended to place plaintiff in apprehension of harm. Even if the gun had not fired, plaintiff arguably could recover for the fear intentionally created by Cormier's act of frightening him. However, plaintiff did not seek recovery of damages resulting from the intentional frightening, but rather sought damages resulting from the unintentional shooting.[3]
Plaintiff further argues that Cormier committed the tort of battery by causing contact without his consent, even if the contact was not intended. However, the question is not whether Cormier committed the tort of battery, but whether he intentionally did so, thereby removing the tort from the exclusive remedy provision of R.S. 23:1032. The evidence shows that Cormier did not.
A more difficult question is whether Cormier was acting within the normal course and scope of his employment at the time of the injury. Under R.S. 23:1032, as noted above, tort immunity does not extend to a coemployee who was not engaged in the normal course and scope of his employment at the time of the injury.
Plaintiff contends that the act of firing the gun (even without the intent to injure plaintiff) was not within the course and scope of the defendant's employment and therefore was not included in the statutory grant of immunity. Plaintiff further argues that the Legislature intentionally qualified the phrase "course and scope of employment" with the term "normal", so as to restrict the immunity to those acts by a coemployee which are regularly performed in his employment.
Cormier was employed as a buyer and substitute service man. His duties included ordering, receiving, checking, pricing and shelving merchandise. During the summer he also substituted for the regularly employed serviceman. Part of Cormier's duties included testing defective items and packaging them for return to the manufacturer. He was handling the rifle as part of the assigned chore of packaging a defective item for shipment, on the employer's premises during regular working hours, when he turned aside momentarily to engage in "horseplay", a diversion which (according to the witnesses) frequently occurred while the employees were performing their regular duties.[4]
We reject the argument that the Legislature inserted the word "normal" to exclude from immunity an executive officer or coemployee who, while clearly in the course of employment, deviates momentarily to do an act which is not an express duty of his employment. An officer or coemployee, who is in the course of performing employment duties, does not go outside of his "normal" course and scope of employment, within the contemplation of R.S. 23:1032, simply because he turns aside momentarily *602 to light a cigarette, or to walk to the telephone to call his wife to remind her about a certain engagement, or to get a drink of water, or to engage briefly in horseplay in the spirit of fun.[5] An officer or coemployee who injures the claimant in such a momentary diversion in the course of performing normal employment duties should not be deprived of immunity on such a tenuous basis.
We interpret the third paragraph of the amended R.S. 23:1032 as intended to provide expressly that the mere relationship of employee and employer (or principal officer, coemployee, etc.) does not preclude the injured employee's recovery from the injury-inflicting officer or coemployee in tort as a third party, unless the officer or coemployee was acting in the course and scope of employment at the time of the injury.[6] We conclude that Cormier's deviation from his regular duties was not so significant or abnormal as to place him outside the normal course and scope of his employment and that his conduct which led to the injury was employment-rooted.
For these reasons, the judgments of the lower courts are affirmed.
DENNIS, J., joins the majority and assigns additional reasons.
DIXON, C. J., dissents with reasons.
WATSON, J., dissents and assigns reasons.
DENNIS, Justice, assigning additional concurring reasons.
I respectfully concur.
Because Cormier neither desired to bring about the physical results of his act or believed they were substantially certain to follow from what he did, his conduct was not "an intentional act" excepted from the worker's compensation exclusive remedy rule. Bazley v. Tortorich, 397 So.2d 475 (La.1981). As we explained in Bazley, the exception of intentional acts from the compensation system is based on two grounds: it acts as a penalty upon the employer for his intentional injury to his employee; and the employer will not be heard to say his intentional act was an "accidental" injury and so under the exclusive provisions of the compensation act. Bazley at 480. We also noted that courts in most states imposing such statutory or common law penalties for intentional misconduct have required the commission of a genuine intentional tort and have refused to stretch liability to include negligence, recklessness, or constructive intent. 2 A. Larson, Workmen's Compensation, §§ 6813, 6920 (1976).
Although it cannot be free from all doubt, I believe that our workmen's compensation statute displays a legislative aim to except only genuine intentional torts from the compensation system. The Act does not refer to reckless, willful or wanton conduct. Every general definition of intentional act we have examined requires that the actor either desire the consequences of his act or believe that the consequences are substantially certain to result from it. Restatement *603 Second of Torts, § 8A; W. Prosser, Law of Torts § 8 (1971); Cf. La.R.S. 14:10.
It is true that Cormier's conduct might amount to a "battery" as defined by the Restatement §§ 13 and 16(1). But it clearly does not fall within the Restatement's definition of an intentional act. Restatement Second of Torts § 8A. In carving out a penalty for non-accidental injuries caused by employers or co-employees, the legislature used only the general term "intentional act" and gave no indication that it wished to depart from the national trend by stretching liability to include negligence, recklessness, or constructive intent.
DIXON, Chief Justice (dissenting).
I respectfully dissent.
Pointing the gun at plaintiff and pulling the trigger were intentional acts. Cormier meant harm to plaintiffhe meant to frighten him. There should be no requirement in a case like this, differing from all other kinds of cases, that the offender is liable only for the consequences of his deliberate and unlawful act which he actually contemplated.
WATSON, Justice, dissenting.
Pointing and firing a gun is an intentional act even though the assailant's only purpose is to frighten his co-employee. Workmen's compensation is not the exclusive remedy for an employee injured by an intentional act. LSA-R.S. 23:1032.
The distinction between intent and negligence is a matter of degree. When Cormier aimed the rifle at Citizen in an attempt to frighten him, he committed the tort of assault. Assault is defined by LSA-R.S. 14:36 as:
"... an attempt to commit a battery, or the intentional placing of another in reasonable apprehension of receiving a battery."
Cormier intentionally placed Citizen in apprehension of being shot. The tort of assault was intentional. See Restatement of Torts 2d § 21. There is, strictly speaking, no such thing as a negligent assault. William L. Prosser, Law of Torts (4th Ed., 1971) page 41. It is unnecessary to intend injury; it is sufficient to intend to frighten. Since this assault was committed with a dangerous weapon, it was an aggravated one. Assault and battery are closely related concepts which are generally confused in the popular mind.
"Except for this difference in the character of the invasion of the plaintiff's interests, the two are in all respects identical, and there is no apparent reason why the rules applied to battery, including the fiction of `transferred intent', should not also apply to assault." Prosser, Law of Torts, supra, at p. 41.
When an assault occurs, the intent which accompanies the assault should be transferred to any resulting battery. There are "... grounds for inferring the constructive intent which makes a wrongful act willful." Reynolds v. Pierson, 29 Ind.App. 278, 64 N.E. 484 at 485 (1902). The battery itself becomes intentional even though the result is not intended.[1] See the discussion of "Transferred Intent" in Prosser, Law of Torts, supra, beginning at page 32.[2] "[A]n intention to produce such an effect must be imputed, and it is no answer in law to say that more harm was done than was anticipated, for that is commonly the case with all wrongs." Wilkinson v. Downton, 2 Queen's Bench 57 at 59 (1897).[3]
Bazley v. Tortorich, 397 So.2d 475 (La.,1981) held that intentional act is used *604 in LSA-R.S. 23:1032 as a synonym for intentional tort. One who acts intentionally either consciously desires the result or knows that the result is substantially certain to follow. Thus, intent generally has reference to the consequences of an act rather than to the act itself. Bazley v. Tortorich, supra. However, there are some torts in which the motive is immaterial. The unintentional battery which accompanies an intentional assault is such a tort. See Restatement of Torts 2d § 16. Cormier's action in firing the rifle at Citizen was an intentional act within the meaning of LSA-R.S. 23:1032. See Monk v. Veillon, 312 So.2d 377 (La.App. 3 Cir. 1975).
I respectfully dissent.
NOTES
[1] R.S. 23:1032, as amended in 1976, provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word `principal' shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof."
"Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act."
"The immunity from civil liability provided by this Section shall not extend to 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section." (Emphasis supplied.)
[2] George Duplechain, the clerk who received the defective rifle from the purchaser and who witnessed the shooting, testified that he told Cormier he had test-fired the gun and determined that it would not shoot. Duplechain further testified that when plaintiff walked into the store while Cormier was packaging the gun for shipment, Cormier took the gun in his hand, told Duplechain that he was going to scare plaintiff, and from waist level pointed the gun at plaintiff and fired. To everyone's surprise, a pellet was discharged and struck plaintiff.

Plaintiff's own testimony supports the conclusion that Cormier did not intend to shoot him. Plaintiff testified that he had no reason to believe that defendant intended to injure him, stating that the employees often joked with one another on the job and that he and defendant were on friendly terms.
[3] Likewise, plaintiff did not seek damages resulting from the tort of intentional infliction of emotional distress.
[4] Plaintiff testified that he was often the object of "ribbing" and frequently engaged in playful joking himself. All of the witnesses characterized the shooting incident as resulting from "horseplay" that often occurred on their employer's premises.
[5] In all of the reported Louisiana cases in which "horseplay" is discussed, the issue was whether an injured employee was entitled to compensation. See Schexneider v. General American Tank Co., 5 La.App. 84, 88 (Orl.Cir. 1926); Brown v. Vacuum Oil Co., 171 La. 707, 132 So. 117 (1930); Vignaul v. Howze. 150 So. 88 (La.App. 1st Cir. 1933); Favre v. Werk Press Cloth Mfg. Co., Inc., 152 So. 694 (La.App.Orl. Cir. 1934); Singleton v. Younger Bros., Inc., 247 So.2d 273 (La.App. 4th Cir. 1971), cert. denied, 249 So.2d 202. In each of these cases, the court held that the risk of injury from horseplay was to be expected in the work place and that horseplay injuries arose out of the employment for purposes of determining entitlement to workmen's compensation benefits. See Malone and Johnson, above, Vol. 13 § 197.
[6] The Legislature used tort terminology of "course and scope of employment", the technical compensation terminology being "arising out of and in the course of his employment". R.S. 23:1031. The increasing trend is to test the employer's vicarious tort liability by criteria similar to that used in compensation cases. LeBrane v. Lewis, 292 So.2d 216 (La. 1974). Although there is some sentiment to construe the test broadly to favor recovery, depending on the type of recovery the victim is seeking, the present case does not fairly present that question.
[1] In Bourque v. Duplechin, 331 So.2d 40 (La. App. 3 Cir. 1976) writ refused 334 So.2d 210; writ not considered, 334 So.2d 230, there was a battery, but the battery was not preceded by an intentional assault. Since Duplechin did not intend the harm that resulted to Bourque, the tort was negligent rather than intentional.
[2] "An assault and battery is not negligence. The former is intentional. The latter is unintentional." Eckerd v. Weve, 85 Kan. 752, 118 P. 870 at 871 (1911).
[3] An interesting case, which also involved the unintended consequences of an intentional practical joke.