FRED W. JONES, Jr., Judge.
The plaintiff, Helen Francis Robinson, brought this action in tort against her supervisor, Takakyo Ikari, for a gunshot wound which he inflicted upon her during the course of their duties in the kitchen at the Nanking Restaurant. Also named as defendants were Nanking Restaurant, Inc., and Insurance Company of North America. The trial judge granted Ikari’s motion for summary judgment, asserting the undisputed facts show that the gunshot was accidental and that suit against a co-employee for an unintentional tort is barred by La.R.S. 23:1032. The judgment was limited to the defendant, Takakyo Ikari. The plaintiff appealed, alleging that the defendant was not in the “normal course and scope of employment,” and that intent is best determined at a trial on the merits.
We affirm for the reasons hereinafter explained.
The plaintiff’s deposition states the facts as follows:
Q. What took place?
A. He had a little easing, sort of like the clear casing you buy cigars in—
Q. A little plastic box?
A. Yes. And it had a bullet in it. So he said, “See, I have a silver bullet.” And I said, “That ain’t no silver bullet, that ain’t nothing but an old .25,” you know, like that. And he went on. I went on doing what I was doing, and he went on doing what he was doing. So I was mixing a batter then, and about ten minutes later I was frying the pork. And I can’t tell you what direction he came in from, if he came from behind me, the side of me or what, you know, but all I know is I could see his hand, and I can’t tell you exactly which hand it was, and there was a gun laying in it. And it was a .25, you know, because I know what it looks like. So he put it in the firing position and he pointed it toward the wall.
*182 The way the kitchen is set up, there is a wall behind the Chinese woks, you know. So it was pointed toward that, and he went to pull back on it, and I told him, I said, “Don’t do that; take the clip out.” I said, “Because a .25 will go off if you blow at it too hard.” So, apparently he didn’t hear me, or something, because he just pulled it back and then let the lever go. And after that, all I know is he turned around, pointed it at me, and somehow it went off.

Q. Just the second he swung toward you it went off?
A. He turned around and faced me— you know, I was taking the pork out of the wok — and all I know is, I heard it when it went off, and it hit me here, (indicating) and I said, “Damn, Taka, you shot me,” like that, you know. And I just left.

Q. Did he give you any explanation at this time of why the gun went off?
A. He said he didn’t know it was loaded.
Q. He didn’t know it was loaded, or he didn’t know whether or not it was loaded?
A. He said, “I didn’t know it was loaded."
Q. Had you all been having any disagreements that would give any indication that he wanted to shoot you with the gun?
A. No.
Q. Did he seem upset that you had been shot?
A. Well, he was in shock.
Q. He was in shock?
A. Yes. I think he was in a bigger shock than I was. Because he stood on the boards in the same position a good five minutes before he ever came to the area where I was. I left him standing there.
Q. At the time, did you know of any reason why he might want to shoot you with the gun.
A. No.
(Deposition of Helen Francis Robinson, pp. 11-15)
The trial judge stated in his reasons for summary judgment that the only witnesses to the shooting were the plaintiff and the defendant. He noted that sworn statements by both parties indicated that the shooting was an accident. He concluded that there was no genuine issue of material fact concerning the incident. The court relied on the definition of an “intentional act” in Bazley v. Tortorich, 397 So.2d 475 (La.1981) and Citizen v. Daigle, 418 So.2d 598 (La.1982) and determined that this defendant did not commit an “intentional act” within the meaning of La.R.S. 23:1032. Finally, the trial judge concluded that “Mr. Ikari’s deviation from his regular duties did not place him outside the normal course and scope of his employment.”
The granting of a motion for summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, admissions on file, together with any affidavits filed, show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. Article 966; Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); Chaisson v. Domingue, 372 So.2d 1225 (La.1979); Travelers Ins. Co. v. Blanchard, 431 So.2d 913 (La.App. 2d Cir.1983).
In the present case, there is no genuine issue as to a material fact. There are two issues of law: (1) whether the actions of the defendant constitute an “intentional act” within the meaning of La.R.S. 23:1032, and (2) whether the actions of the defendant were within the “normal course and scope of his employment.”
INTENTIONAL ACT
Bazley is the leading case explicating the amendment to R.S. 23:1032 made by Act 147 of 1976. “The principal legislative aim *183 of the 1976 amendment was to broaden the class of defendants to be granted immunity from suits by injured employees in tort or delict.” Bazley, at 479. However, the necessity for punishing intentional wrongdoers caused the legislature to provide that “the exclusive nature of the compensation remedy does not apply to intentional acts.” Bazley, at 480. The court then determined that the legislative aim was to equate an “intentional act” with the well-established meaning of “intentional tort.” The court expressly refused to focus on the intentional act, instead it found that the legislative intent was to emphasize the intentional harm or consequences. Bazley, at 481.
The more recent Louisiana Supreme Court case of Citizen v. Daigle, buttresses the Bazley language in a factual situation closely analogous to this case. In Citizen, a co-employee purposely aimed what he thought to be an unloaded and broken gun at the plaintiff and pulled the trigger in an attempt to frighten the plaintiff. The gun went off and injured the plaintiff. The court stated that the defendant did not desire to bring about the injury, nor was he substantially certain that injury would result from what he did.
The uncontradicted facts in this case show that Mr. Ikari did not intend to harm Miss Robinson, nor was he substantially certain that his conduct would cause harm to her. Certainly an accidental discharge of a gun should not be considered intentional if the act of aiming a gun and pulling the trigger in Citizen was held not to be intentional. Therefore, we hold this plaintiff is not allowed a tort remedy by the “intentional act” provision of La.R.S. 23:1032.
NORMAL COURSE AND SCOPE OF EMPLOYMENT
Plaintiff urges that playing with a gun in the kitchen should not be considered within the normal course and scope of Mr. Ikari’s employment as kitchen manager of a restaurant. Plaintiff cites two cases which merit discussion.
In the case of Conaway v. Marine Oil Co., 110 So. 181 (La.1926), written under the old, much narrower Employer’s Liability Act of 1918, the accidental pistol killing of one gasoline station attendant by another while on the job was held not to be compensable. The court observed that the gun was not connected with the employee’s job since the gun was not alleged to belong to the employer or alleged to be kept on the premises for the protection of the employer’s or employee’s property. While not passing on whether Conaway would be decided differently under the current compensation act, we note that this case is readily distinguishable in that Mr. Ikari was a manager and he stated in his affidavit that the gun was for “security purpose” (sic).
The case of Powell v. Gold Crown Stamp Company, 204 So.2d 61 (La.App. 2d Cir.1967) is cited by the plaintiff for the proposition that each case must be decided on its own facts. We agree. In fact, this court found in Powell that the shooting of an employee on the worksite by a jealous husband who accused the employee of kissing a co-employee was an “accident” within the “course of employment” under the similar language of La.R.S. 23:1031. The facts of that case are less clearly within the “course of employment” than are the facts of this case.
Plaintiff emphasizes the use of the word “normal” in La.R.S. 23:1032. Plaintiff argues that “normal” was intended to restrict the scope of the language “course and scope of employment.” The court in Citizen held that the deviation of the employee who shot his fellow employee was “not so significant or abnormal as to place him outside the normal course and scope of his employment and that his conduct which led to the injury was employment-rooted.” Citizen, at 602. The employee who turns aside to do something that is not to the direct benefit of the employer does not necessarily leave the normal course and scope of his employment. A certain degree of deviation or turning aside is normal. As Justice Lemmon explained:
*184 “We reject the argument that the Legislature inserted the word ‘normal’ to exclude from immunity an executive officer or coemployee who, while clearly in the course of employment, deviates momentarily to do an act which is not an express duty of his employment. An officer or coemployee, who is in the course of performing employment duties, does not go outside of his ‘normal’ course and scope of employment, within the contemplation of R.S. 23:1032, simply because he turns aside momentarily to light a cigarette, or to walk to the telephone to call his wife to remind her about a certain engagement, or to get a drink of water, or to engage briefly in horseplay in the spirit of fun. An officer or coem-ployee who injures the claimant in such a momentary diversion in the course of performing normal employment duties should not be deprived of immunity on such a tenuous basis.”
Citizen, at pp 601-2. (footnote omitted)
We conclude that the trial court correctly granted defendant’s motion for summary judgment and affirm the district court’s judgment at appellant’s cost.